[L. A. No. 9533. In Bank.—August 24, 1929.]

JOHN BEACH LANE et al., Appellants, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Luce & Swing for Appellants.

Morrison, Hohfeld, Foerster, Shuman & Clark, V. F. Bennett, Read G. Dilworth and C. Coolidge Kreis for Respondent.

THE COURT.—When this cause was before the District Court of Appeal an opinion was rendered by said court, reversing the judgment herein, and directing the trial court to enter judgment in favor of the plaintiffs and appellants. This opinion was prepared by Presiding Justice Finch and concurred in by Justice Plummer and Justice Shields *pro tem.* We are in accord with the following portion of said opinion, which we hereby adopt as the decision of this court in said cause:

"The plaintiffs have appealed from the judgment herein denying their application for a permanent injunction re-

straining the defendant from maintaining its car tracks and operating its cars across the sidewalk and the street immediately adjacent thereto in front of their building.

"The defendant owns lots 1, 2, 3, 4, 5 and 6, block 38, La Jolla Park, in the city of San Diego. The plaintiffs own the adjoining lots 7 and 8. All the lots face west on Fay street, with uniform frontage of 25 feet, except lot 1, which has a frontage of 24 feet. The defendant operates a single-track electric street railway along Fay street, but maintains a double track in front of block 38, the westerly track being 'intended as a holding track . : . upon which cars could be spotted, or placed,' the double track being at the northerly terminus of the line. Prior to any controversy between the parties the defendant erected a substantial passenger depot on its said lots. In June, 1924, it commenced the construction of a loop consisting of an extension of the easterly track in a right-hand curve around the depot and back to the easterly track at the intersection thereof with the south line of lot 8 extended. The plaintiffs made seasonable objection to the construction of the loop in front of their property during the progress of the work, and they commenced this action prior to the completion thereof, but the defendant proceeded to complete the loop and has thereafter used it for the purposes intended. Following the loop in the reverse order of that stated, it leaves the easterly track at the southerly line (extended) of lot 8 and, curving to the right, the right-hand rail intersects the curb in front of lot 7 at a point 5½ feet south of the north line (extended) of lot 7 and continues in such a course across the sidewalk that the side of a street car moving over the loop passes within 3½ feet of the corner of that lot, the overhang of the street car around the curve being about 3 feet to the right of the right-hand rail. The defendant constructed a culvert over the gutter at the curb in front of lots 6 and 7, the southerly end thereof extending to about the middle of the curb line in front of lot 7. The sidewalk is 14 feet in width and the distance from the east rail of the main track to the curb is about 17 feet.

"On the plaintiffs' lots, occupying the whole of the front thereof on Fay street, is a one-story brick and tile building used as a garage, the entrance thereof for vehicles being

immediately south of the dividing line between lots 7 and 8. There is a door in the northwest corner of the building, opening on Fay street. The building was so planned that the front part thereof, on lot 7, 'could be rented as a separate small store.' It was constructed of sufficient strength 'to carry two additional stories in the front part.'

"The evidence shows without contradiction, and a map introduced in evidence, which respondent concedes 'correctly shows the situation,' demonstrates that an average automobile or truck cannot be parked in front of lot 7 while a street car is passing over the loop in front of that lot. Defendant's engineer of maintenance and construction testified that even if the southerly end of the loop were connected with the west track directly west of the present connection it would not be possible to park an automobile of greater length than ten feet in front of lot 7 during the passage of a car over the loop. The defendant introduced evidence to the effect that at the time of the trial cars passed over the loop at half-hour intervals, but there appears to be nothing to prevent the use of a greater number of cars in the future. In so far as it lies within its power, the city of San Diego has authorized the maintenance of the loop in its present location. The court found:

" 'It has not been established by the evidence that either plaintiffs, or any lessees, or patrons of plaintiffs, are prevented from having free ingress, egress or regress to, on or from the property or buildings upon the property of plaintiffs by reason of the construction of said electric street railway turn-out track or the operation of electric street cars thereover.'

"It is clear from what has been stated that this finding is contrary to the uncontradicted evidence, which demonstrates that access to lot 7 is substantially and seriously interfered with by the operation of cars over the loop, and it appears, not only from the uncontradicted testimony of the witnesses, but also from the application of common knowledge to the physical facts shown by the map referred to, that the maintenance of the loop in its present location and the operation of cars thereover will substantially depreciate the market value of plaintiffs' property. It re-

quires no proof beyond the bare statement of the situation to show that the regular running of street cars over the sidewalk in front of a business house will cause damage.

█ "'An abutting owner has two kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this regardless of whether the fee of the highway is in him or not. . . . An abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken away from him without due compensation.' (29 C. J. 547; *Fairchild* v. *Oakland & Bay Shore Ry. Co.,* 176 Cal. 629 [169 Pac. 388]; *Cushing-Wetmore Co.* v. *Gray,* 152 Cal. 118, 123 [125 Am. St. Rep. 47, 92 Pac. 70]; *Smith* v. *Southern Pac. R. R. Co.,* 146 Cal. 164 [106 Am. St Rep. 17, 79 Pac. 868]; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614 [42 Am. St. Rep. 149, 37 Pac. 750]; *McLean* v. *Llewellyn Iron Works,* 2 Cal. App. 346 [83 Pac. 1082, 1085].)

"'An abutter has a limited right to obstruct the roadway and sidewalks in a municipality by reason of his business or household exigencies, as, for example, by teams and vehicles permitted to stand in front of his property for a reasonable time. . . . And an abutting owner may use the street as for the purpose of loading and unloading goods or merchandise, or transporting his goods or other portable articles to and from his property, but such uses must be necessary and reasonable and the abutting owner cannot obstruct the street for long periods each day.' (44 C. J. 956.)

"'The owner of a lot abutting upon a public street has by reason of such ownership a special easement in such street for the purpose of ingress and egress which is property as fully as the lot itself.' (*Cushing-Wetmore Co.* v. *Gray, supra.*)

█ "'Anything which is . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . is a nuisance.' (Civ. Code, sec. 3479.) 'A public nuisance is one which affects at the same time an entire community or neighborhood, or

a considerable number of persons.' (Civ. Code, sec. 3480.) 'Every nuisance not included in the definition of the last section is private.' (Civ. Code, sec. 3481.) The obstruction of an abutting owner's access to a public street constitutes a private as well as a public nuisance. (*Cushing-Wetmore Co.* v. *Gray, supra.*) 'An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as the same is defined in section thirty-four hundred and seventy-nine of the Civil Code, and by the judgment in such action the nuisance may be enjoined or abated as well as damages recovered therefor.' (Code Civ. Proc., sec. 731.) 'Any injury to the use of the street which impairs plaintiff's private easement in the street in front of and adjacent to his lot amounts to an injury giving plaintiff, as an abutting owner, the right to maintain an action for damages or for an injunction.' (*Strong* v. *Sullivan*, 180 Cal. 331, 333 [4 A. L. R. 343, 181 Pac. 59, 60]; *Sala* v. *City of Pasadena*, 162 Cal. 714, 717 [124 Pac. 539]; *Wilcox* v. *Engebretsen*, 160 Cal. 288, 299 [116 Pac. 750]; *Danielson* v. *Sykes*, 157 Cal. 686, 691 [28 L. R. A. (N. S.) 1024, 109 Pac. 87]; *Williams* v. *Los Angeles Ry. Co.*, 150 Cal. 592, 594 [89 Pac. 330].) Respondent relies on a few decisions from other jurisdictions. It is deemed sufficient to say that such decisions are in conflict with the California cases cited herein and that the latter appear to be in harmony with the great weight of authority. In *Fairchild* v. *Oakland & Bay Shore Ry. Co., supra,* it is said that an abutting property owner's right of action for any special or peculiar damage caused by obstruction in a street not suffered by other property owners, 'is precisely one of those rights of action for the damaging of property which, if it did not exist before, came into existence by virtue of our constitutional amendment granting a recovery for the damage as well as for the taking of property for public use.'

"In *Frost* v. *City of Los Angeles*, 181 Cal. 22, 31 [6 A. L. R. 468, 183 Pac. 342, 346], it is said, quoting 2 Beach on Injunctions, section 1067: 'When an injunction to restrain a nuisance will produce great public or private mischief, a court of equity is not bound to grant it merely for the purpose of protecting a technical unsubstantial right.' In this case the plaintiffs' right is neither techni-

cal nor unsubstantial but a valuable property right. Neither will the issuance of an injunction 'produce great public or private mischief.' It does not appear that it would be at all difficult or would involve great expense to so locate an equally serviceable loop as to avoid damage to the plaintiffs' property. But whatever its necessities were it was not justified in taking the plaintiffs' property without compensation. (*Smith* v. *Southern Pac. R. R. Co.*, *supra*.) No public mischief would be produced even by the abandonment of the southerly connection of the loop, because such change would merely necessitate the switching of the trolley for the return trip, or once every half hour. The fact that the continued use of the southerly end of the loop will eventually ripen into a prescriptive right is a sufficient ground, regardless of any question of present damage, to entitle the plaintiffs to an injunction. (*Danielson* v. *Sykes, supra.*)"

Judgment reversed.