[Civ. No. 6894.   Third Dist.   May 24, 1944.]

NOBLE N. BECKHAM et al., Respondents, v. CITY OF STOCKTON et al., Defendants; STATE OF CALIFORNIA, Appellant.

488

C. C. Carleton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed for Appellant.

Robert W. Kenny, Attorney General, Chas. W. Johnson and Everett W. Mattoon, Deputies Attorney General, as Amici Curiae on behalf of Appellant.

Charles H. Vance and James C. Nichols for Respondents.

ADAMS, P. J.—This is an action brought by five owners of property abutting on East Worth Street in Stockton, to recover damages alleged to have been sustained by them as the result of the construction of an improvement in Wilson Way, a street which intersects East Worth Street at one end of the block in which plaintiffs' properties are situated.

As appears from the map* made a part of this opinion, Wilson Way runs approximately north and south. East Worth Street runs at right angles thereto, and the block in which plaintiffs' property is situated is bounded by Wilson Way on the west, Eugenia Street on the east, and Milton Way on the south. Eugenia Street is a short street extending two blocks, from East Worth Street to East Anderson Street, and the latter street intersects Wilson Way at a point just south of the point of commencement of the improvement thereon. The next street parallel to East Worth Street on the north is Taylor Street upon which are situated the tracks of the Atchison, Topeka & Santa Fe Railway Company. The next street parallel to Wilson Way on the west is Sierra Nevada Street which is intersected by Taylor, East Worth and East Anderson Streets, all of which extend across Wilson Way. The next street beyond Sierra Nevada Street is Ophir (or Pilgrim) Street, referred to in the testimony but not shown on the map.

In the year 1937 the State of California, acting through its Department of Public Works, and under the authority of the Railroad Commission, constructed a subway in Wilson Way for the purpose of eliminating the grade crossing of the railroad tracks on Taylor Street. The depressed portion of this underpass begins at a point between East Worth Street and Milton Way, but a concrete curb along the center of the subway begins just north of the intersection of East Anderson Street and Wilson Way.

As a part of this street improvement defendants widened

*See pages 490 and 491.

*Exhibit #1*

Wilson Way between East Anderson Street on the south and East Hazelton Street on the north beyond the railroad tracks, as appears on the map. The former width of Wilson Way (48 feet) is indicated by its present width south of East Anderson Street, and north of East Hazelton Avenue. No changes were made in East Worth Street, which now, as formerly, intersects Wilson Way at grade; but after the construction of the underpass, crossing of the railroad tracks at grade northward on Wilson Way was cut off by the erection of a parapet as shown on the map. East Worth, Milton and East Anderson Streets are all 24 feet in width between curbs, Eugenia Street has a width of 30 feet, the portion of Wilson Way on either side of the subway between Taylor and Milton Streets is 30.3 feet to the sidewalk, and the portion of the street that crosses the subway is 39 feet in width. All of these streets are paved and have sidewalks. East Worth extends easterly beyond Eugenia Street to "B" Street, but its distance therefrom is 1750 feet. As appears upon the map, "B" Street extends north and south from Worth Street, and crosses the tracks of the Atchison, Topeka & Santa Fe Railway Company, but said street is improved only to a secondary extent. A portion, only 15 feet, of Taylor Street is paved where it extends west from Wilson Way across Sierra Nevada Street to Ophir Street. Its grade is the same as the portion of Wilson Way over the subway with which it connects.

The properties of all defendants abut only upon East Worth Street. The triangular shape of the lot which separates the Beckham property from Wilson Way is due to the taking by the State of a portion of a lot which previously occupied the corner, for the purpose of widening Wilson Way as a part of the improvement thereof. The tract in which plaintiffs' homes are located is zoned for residential purposes only.

Plaintiffs in their amended complaint allege that Wilson Way is the main traffic artery in the easterly part of Stockton connecting the area within which their property is located with the business district, and forms a part of U. S. Highway No. 99; "that there is no ingress or egress from Plaintiffs' said property to any highway or public street in the City of Stockton except over Wilson Way;" that by reason of its access from Worth Street to Wilson Way plaintiffs' property was valuable and suitable for residence purposes prior to the acts of defendants; that in constructing the underpass de-

fendants built the side walls of same "across the intersection of Wilson Way with Worth Street in such a manner as to cut off Plaintiffs' said real property from access to Wilson Way;" that plaintiffs, since said construction, "have been forced to reach their said property over a narrow, unsafe, and impracticable detour leading from Wilson Way over the top and sides of said underpass to Worth Street, and have thereby been cut off from safe or reasonable access to the public streets of Stockton." The value of plaintiffs' properties is alleged to have been depreciated "solely by reason of the construction of said underpass, and the cutting off of said access to Wilson Way and the public system of streets."

The case was tried by the court sitting without a jury and resulted in a judgment for plaintiffs. The court filed a written opinion and in its findings of fact found that Wilson Way is the main traffic artery in the portion of Stockton in which plaintiffs' properties are located and constitutes the main trunk artery of traffic connecting said portion of the city with the business district and with public travel over State Highway No. 4, and Highway 99, of which it forms a part; that at the time plaintiffs purchased their property East Worth Street intersected the main traveled portion of Wilson Way at grade, and that plaintiffs had a ready, free and safe access from Worth Street to the general system of streets of the city and the highway system, and that by reason of local conditions existing in said area Wilson Way "constituted the only reasonably safe, adequate, reasonable and adequate access to the general system of streets." Also, that the State constructed said underpass "so that the sidewalls thereof shut off East Worth Street from Wilson Way; and that after the construction thereof the plaintiffs' real property was and is cut off from access to Wilson Way and to the general system of streets of the City of Stockton, except by a narrow, unsafe, personally hazardous, tortuous, and inadequate detour or bypass leading from Worth Street and plaintiffs' said real property to the top of said underpass above Wilson Way, and thence by a narrow unsafe and personally hazardous detour into Wilson Way. That it is also possible for plaintiffs to reach their real property (but not to emerge from it) by continuing along Wilson Way through said underpass until the same returns to the original grade of Wilson Way at a point several hundred feet south of plaintiffs' said real

property, and there making a left turn against traffic to the east on to a side street which connects with East Worth Street. That Wilson Way is a heavily travelled trunk high-way and traffic is very fast, and that said left turn can only be made at great personal hazard to any person making the same, and said left turn has been at all times and now is prohibited by local law.* That by reason of said conditions the plaintiffs' real property has sustained a damage other than and differing from that sustained by the general public, and that the same is not a mere inconvenience, but a damage peculiar to said real property and to said plaintiffs and differing in kind from that sustained by the general public. That the said real property has been cut off from reasonable access to the public streets of Stockton and the State of California, and that the remaining access is not reasonable, nor safe, but is unreasonable and hazardous to the life and limb of any person residing on said property, who attempts to travel the streets of Stockton, and that plaintiffs' easement of access to Worth Street has thereby been unreasonably and peculiarly impaired by the construction of said underpass; and that as a result thereof the plaintiffs' said real property has been depreciated in market value, and rendered practicably unsalable, because the same has been left in what is, from the standpoint of reasonable access, a virtual cul-de-sac.''

Defendant State of California has appealed, contending that no injury to any property right of plaintiffs has been shown, and that the findings with respect to the alleged damage and the judgment based thereon are without support in the evidence.

The case was argued before this court prior to the decision of the Supreme Court in *Bacich* v. *Board of Control*, 23 Cal. 2d 343 [144 P.2d 818], and our decision was deferred pending a determination of that case. After its determination we heard further argument, at which time respondents asserted that they rely on the proposition that the construction of the subway on Wilson Way has made a cul-de-sac of Worth Street and that, therefore, on the authority of the Bacich

*There is no evidence that this left-hand turn has been or is prohibited by local law. As appears from the map, there is, in the center of the highway in front of the intersection of Wilson Way and East Anderson Street, a sign reading "Keep to the right," but said sign does not prohibit a left-hand turn into East Anderson Street by persons going south on Wilson Way, but only applies to northbound traffic.

case alone, it follows that the judgment in their favor must be affirmed.

From the findings above set forth and from the opinion filed by the trial court it appears that that court concluded that Worth Street has not been entirely closed by the subway but that it has, in effect, become a cul-de-sac because plaintiffs must now follow a more circuitous route than formerly in going to and from their homes, and, in pursuing such course they encounter certain so-called hazards which it says are "peculiar to plaintiffs because they are exposed more frequently thereto than the general public," and that, therefore, plaintiffs' easement of access in Worth Street has been damaged to an extent justifying the recovery of damages.

Appellant contends that such conclusion of the trial court is not sound as a matter of law and that factually it is not sustained by the evidence.

Preliminarily, then, the nature and extent of the property rights of plaintiffs as abutting owners on Worth Street must be defined and delimited. In *Rose* v. *State of California*, 19 Cal.2d 713 [123 P.2d 505], it was held that the property right which an abutting owner has in the street in front of his land is the right of access and of light and air; that it is an easement which such abutting owner has to the use of the street fronting upon his lot for the purpose of ingress and egress, which right attaches to the lot itself, and which is peculiar and individual to the abutting owner, differing from the right of passing to and fro which he enjoys in common with the general public. In the Bacich case, *supra*, the extent of that easement was under consideration, and it was there held that such abutting owner's easement is more extensive than the mere opportunity to go onto the street immediately in front of his property, and that "the right of access extends in both directions to the next intersecting street." And because in that case access to Sterling Street upon which Bacich's property abutted was cut off at one end of the block by the lowering of Harrison Street, the next intersecting street in one direction, and plaintiffs' property was thus left in a cul-de-sac, it was held that his easement of access to his property on Sterling Street had been impaired.

As above stated, plaintiffs in the case before us rely upon the decision in the Bacich case, contending that because the improvement on Wilson Way prevents their immediate access

to the subway portion of Wilson Way from Worth Street, and, in order to gain access to such subway portion, or otherwise to reach the general system of streets of the city, plaintiffs must pursue a circuitous course which course presents certain hazards, Worth Street has, in effect, become a cul-de-sac, and the easement of access which attaches to plaintiffs' lots on Worth Street has been damaged.

A cul-de-sac is defined to be "a passage or place with only one outlet, as a blind alley . . ." (Webster's New International Dictionary); "A way, street or alley open only at one end" (Ballantine's Law Dictionary; 10 Words and Phrases (perm. ed.) 633; 25 C.J.S. 20).

Obviously the improvement on Wilson Way does not close the end of Worth Street since that street intersects at grade the outer portion of Wilson Way, which portion is 30.3 feet in width. May it then be held that despite this fact plaintiffs' easement in Worth Street has been impaired? To so hold would, we believe, necessitate a definite extension of the abutting owner's right of access as defined in the Bacich case; for what the court there held was only that such abutting owner's right extends in both directions to the next intersecting street. The language there used by the court and the authorities cited suggest that such easement does not embrace more than the right to pass into such next intersecting street, and that any inconveniences which may be suffered or hazards encountered thereafter do not affect the easement of such property owner. See 4 McQuillan, Municipal Corporations (2d ed.), section 1527; Lewis on Eminent Domain (3d ed.), section 191, cited in Bacich case at page 354. This construction of the language of the court is consistent with its language in *City of San Mateo* v. *Railroad Commission*, 9 Cal. 2d 1, 11 [68 P.2d 713], where it is said: "We therefore assume that property other than that of the railroad company does not directly abut upon any of the area directed to be closed, and that the private property in question is contiguous to either the county or the state highways which are connected by such public crossings. If such be the case no obstruction to the ingress and egress from those highways has been created by the order of the commission." While the foregoing may have been dictum it is, nevertheless, persuasive in construing subsequent language of the court. In the Bacich case in the District Court of Appeal, 128 P.2d 191,

197, Mr. Justice Peters said that "The right of the property owner is limited to access and use of the street upon which his property fronts to the next intersection in either direction. Property owners beyond that point have suffered no damage different from that suffered by the general public." Also in that case one of the alleged grounds for recovery was that in approaching plaintiff's property from Bryant Street, the next intersecting street at the opposite end of the block, it was necessary to pass under one of the approaches to the bridge; but the Supreme Court said (p. 356) that "It does not appear that the elevated road between plaintiff's property and Bryant Street in any way interferes with his access *to* the latter street or impairs any easement, if one exists, to light, air or view." (Italics ours.)

In *Rose* v. *State of California, supra,* the improvement in the street upon which plaintiff's property abutted was similar to that upon Wilson Way. As we read that opinion the impairment of plaintiff's easement of ingress or egress was based upon the fact that the portion of the highway left available for plaintiff's use immediately in front of his property (said property being zoned for commercial purposes) was but 14 feet in width and too narrow for two vehicles to pass each other; and there is no suggestion that had such lane been 30.3 feet in width, as are the portions of Wilson Way on either side of the subway, a finding of impairment of plaintiff's easement would have found support in the evidence. And there is certainly nothing in that case suggesting that had the improvement there under consideration been on one of the streets intersecting Jackson Street, any property right of plaintiff would have been invaded. Also, the court there said (p. 731) that "Since every property owner for a great distance therefrom is somewhat inconvenienced by the closing of a street, the question of where to stop awarding damages is not only difficult to ascertain, but the payment of damages in every case of this character would place a great burden upon the public whenever such closings are ordered."

In view of the foregoing this court is not disposed to extend the easement of access of an abutting owner beyond the limits defined in the Bacich case, or to hold that the easement of access which an abutting owner on Worth Street has in that street extends beyond the intersection of same with the streets at either end of the block.

498

Nor do we think that the evidence sustains the finding of the trial court that the construction of the improvement on Wilson Way has resulted in other than inconvenience to plaintiffs, or that any damage they may have sustained differs from that sustained by the general public, or that their means of access have been thereby rendered unreasonable or hazardous. In support of their complaints plaintiffs called Roy S. Akers, an employee of the State Department of Public Works, under whose direction the map herewith (Plaintiffs' Ex. No. 1) was prepared, and who explained same. This witness was asked by plaintiffs' counsel to state how he would now go from plaintiffs' property to the Court House, and stated that one way would be to go from East Worth Street into Wilson Way, thence north on Wilson Way, crossing over the top of the subway, follow Taylor Street west for two blocks (to Ophir Street), then turn north across the railroad tracks and onto Main Street, then westerly to the Court House; and that in returning he might go south on Wilson Way through the subway, then turn east onto the surface area near East Anderson Street, and thence north on the outer portion of Wilson Way to Worth Street. Also that one going to the Court House from Worth Street could turn north on Wilson Way, cross the subway to the west side of Wilson Way, turn thence south to Anderson Street, and there join the northbound traffic through the subway. Also, leaving the property on Worth Street he could go east to Eugenia, south to East Anderson, and thence west to Wilson Way and into the northbound traffic. To go south on Wilson Way he could go around on Wilson Way over the subway, then south on the west side of Wilson Way, thus fitting into the traffic going south. The only other witnesses called by plaintiffs who testified in regard to the effect of the improvement were Mr. Chadek, called as a valuation witness, and plaintiff Zakel. The former testified that plaintiffs' properties had been decreased in value by reason of the construction of the subway, because it is less convenient to get to it, that the difference is that "you could not go or come directly from your property—that you have to go around." Plaintiff Zakel said that he drove a car and that before the subway was built he used to go out on Worth Street to Wilson Way, and when he came back would cross the traffic on Wilson Way and enter Worth Street; that since the construction he has to make ten extra

blocks each day; that now he usually goes east on Worth Street, south on Eugenia, and, if going down town, goes over Milton Street to the entrance of the subway; that coming home he comes through the west side of the subway to East Anderson, crosses the traffic there and travels on Anderson Street and then Eugenia Street to Worth Street. Also that there is another way (to go north) and that is to go up Wilson Way, cross the subway and follow Taylor to Ophir and cross the railroad tracks on Ophir; but that Taylor is a "fierce" street, narrow and full of chuck holes; also that if he should go from Worth Street to "B" Street and thence north "there is not the proper outlet" because of poor condition of the streets and the fact that freight trains are sometimes left on the tracks for hours. He admitted that before the subway was built he had to make a left-hand turn across traffic if he was going south, and when going north over Wilson Way had to cross the railroad tracks at grade, and that there were frequent train movements there and "quite frequently" he was held up by trains; also that assuming he went through the subway that would be "a safer traffic than before." When asked: "Well, the only reason why your property has decreased as you claim, in your opinion, is that it is more inconvenient to get to your property now than it was before?" he answered, "Yes, sir; the subway is no asset to me."

No witness testified to any hazards or that the routes to be followed after leaving Worth Street were dangerous. On the contrary, J. W. Vickery, safety engineer for the Division of Highways of the State, called by defendant, testified that the surface roadway of Wilson Way and the depressed portion of the subway are adequate and safe for existing traffic, that the improvement was constructed in conformity with the latest engineering thought on such subways, that the portion of the roadway crossing the depressed portion of the subway serves the purpose of getting traffic from one side of Wilson Way to the other and to permit north and south traffic to avoid crossing the railroad tracks at grade. On cross-examination by plaintiffs' counsel he testified to various methods by which residents on East Worth Street can get into the subway, stating they can go around by Eugenia and Milton or East Anderson Streets, or they can make the U turn over the subway if they desire to go south and thence feed di-

rectly into the traffic—that they can now avoid crossing the traffic lanes; that the situation is no more hazardous than it was before; that formerly a driver who wanted to go south from Worth Street had to cross the tracks and then make a U turn over a narrow way.

The testimony of these witnesses and an inspection of the map (Plaintiffs' Ex. 1) show that if plaintiffs desire to go northward from their places of residence they may (1) go west on East Worth Street to Wilson Way, turn north thereon over the level portion thereon (30.3 feet in width) to the portion thereof crossing the subway, there turn west across the portion over subway (39 feet wide) and thence either (a) west over Taylor Street to Ophir (Pilgrim) Street and thence north to the main part of the city, or (b) turn south on the level portion of Wilson Way west of the subway and southward to the intersection of East Anderson Street and Wilson Way where they can cross the southbound traffic and join the northbound traffic through the subway; or (2) they can travel eastward on East Worth Street to Eugenia Street (30 feet wide), thence south to East Anderson (or Milton), thence west to Wilson Way where they can join the northbound traffic through the subway. If they desire to go southward from their places of residence they may (1) follow the latter way and cross the northbound traffic on Wilson Way to the west lane and thence south, or (2) they may go west on East Worth, turn north making the U turn over the portion of Wilson Way over the subway, and join directly the south bound traffic on Wilson Way. By pursuing the latter course they now avoid crossing the traffic, while formerly if they desired to go southward after arriving at the intersection of Wilson Way and East Worth Street it was necessary, by reason of a traffic sign, to go north on Wilson Way over the railroad tracks and make a U turn across traffic at Scotts Avenue or East Hazelton and Wilson Way. Returning from the northern part of the city, plaintiffs may drive south through the west lane of the subway to the intersection of Wilson Way and East Anderson Street, cross the traffic there and proceed to Worth Street either along the easterly portion of Wilson Way or via East Anderson and Eugenia Streets. To be sure this necessitates crossing the northbound traffic on Wilson Way, but it is obvious that this was also necessary prior to the construction of the subway.

■ Thus analyzed, plaintiffs' situation resolves itself into

one of mere circuity and inconvenience of travel after reaching Wilson Way. Such mere inconvenience and circuity of travel are held to constitute no grounds for recovery of damages, and we believe that plaintiffs' easement in Worth Street cannot be held to extend to embrace a right, after leaving Worth Street, to pursue the most convenient course from that street to such destinations as they may seek to reach. Where a cul-de-sac is created, access in one direction is lost. Here it is not lost but after reaching one of the next intersecting streets the route to be pursued is merely rendered less convenient. But circuity of travel beyond an intersecting street does not furnish a basis for recovery of damages. (*People* v. *Ricciardi*, 23 Cal.2d 390, at p. 401 [144 P.2d 799]; *Rose* v. *State of California, supra*, at p. 737; 49 A.L.R. 333; 93 A.L.R. 639; *Hitch* v. *Scholle*, 180 Cal. 467, 470 [181 P. 657].)

Nor do plaintiffs' property rights embrace a right to protection from hazards of traffic. These they share with the general public, and where, as here, the improvement was designed and constructed according to the best engineering thought of the time, and to *lessen* traffic hazards, it cannot be assumed that such hazards have been increased, especially in the absence of testimony to that effect, and where the safety engineer of the State Highway Division testified that the surface roadway of Wilson Way is adequate and safe, and that the situation is no more hazardous than it was before. We are not unmindful of the fact that the trial judge inspected the premises and that his findings allege that "plaintiffs' property is cut off from access to Wilson Way and to the general system of streets . . . except by a narrow, unsafe, personally hazardous, tortuous and inadequate detour or bypass leading from Worth Street . . . to the top of the underpass over Wilson Way, and thence by a narrow, unsafe and personally hazardous detour into Wilson Way"; but we can find no support in the testimony for such a finding and it is inconsistent with the situation shown by plaintiffs' map. None of plaintiffs' witnesses gave evidence of the existence of any hazards, except that Zakel said that Taylor Street is a "fierce" street, narrow and full of chuck holes, and that to go from Worth Street to "B" Street, and thence over the railroad tracks north was not a proper outlet because of poor condition of the streets, and the fact that the railroad company left cars standing on the tracks crossing "B" Street.

From the opinion of the court we deduce that the hazards he finds are due to what he calls narrow streets, a no-left-turn traffic sign where Worth Street enters Wilson Way (which he states has always existed), and a service station on the corner of Wilson Way and Milton Street (or East Anderson Street) which interferes with the view of traffic from the south when approaching Wilson Way. But all of these streets are as wide as Worth Street, and some of them are wider, the existence of the traffic sign and the gas station are not attributable to the new construction, and all of these hazards, if such they be, are encountered after leaving Worth Street, are shared by the general public, are not peculiar to plaintiffs, and furnish no basis for compensation. (*Simpson v. City of Los Angeles,* 4 Cal.2d 60 [47 P.2d 474].) . Property owners on Eugenia Street are in an equally unfavorable situation as far as inconvenience and so-called hazards' are concerned, yet it could hardly be contended that their easements of access to the street upon which their property abuts have been impaired.

Not every depreciation in the value of property by reason of a public improvement can be made the basis of an award of damages. (*Wolff* v. *City of Los Angeles,* 49 Cal. App. 400, 402 [193 P. 862]; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, 617 [37 P. 750, 42 Am.St.Rep. 149]; *People* v. *Ricciardi, supra,* at p. 396.) For instance, diversion of traffic is not a proper element to be considered in computing damages. (*Rose* v. *State of California, supra,* at pp. 737, 740.; *City of Stockton* v. *Marengo,* 137 Cal.App. 760, 764 [31 P.2d 467]; *People* v. *Ricciardi, supra,* at pp. 397, 400.)

Regulations such as the prescribing of one-way traffic or the prohibiting of left-hand turns may interfere to some extent with right of access without furnishing a basis for recovery of damages even by an abutting owner. (See note, 100 A.L.R. 487, 491-493.) In *Eachus* v. *Los Angeles etc. Ry. Co.,* . *supra,* the court said: "The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; . . ."

We think that the trial court, in rendering its decision, lost sight of the legal principle upon which plaintiffs

must rely for a recovery, to wit, the infringement of some right which the owner of land possesses *in connection with his property* (*Rose* v. *State of California, supra,* at p. 739); and such property right is that of reasonable use of *the street fronting the property* in either direction *to* the next intersection, which plaintiffs still have, and inconvenience or even hazards which they may encounter after leaving Worth Street cannot be said to impair their easements, but constitute damage not different in *kind* (though possibly in degree) from that shared by the general public, and furnish no basis for the recovery of compensation.

We conclude that plaintiffs have failed to show any impairment of their easement of access or any injury from the improvement on Wilson Way justifying the recovery of damages. This conclusion renders it unnecessary to consider other errors urged by appellant.

The judgment is reversed.

Peek, J., and Thompson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 20, 1944. Carter, J., and Schauer, J., voted for a hearing.