[L. A. No. 25754. In Bank. May 20, 1960.]

THE PEOPLE ex rel. Department of Public Works, Respondent, v. CORNELIUS L. AYON, as Administrator, etc., et al., Defendants; YOR-WAY MARKETS (a Corporation) et al., Appellants.

*Assigned by Chairman of Judicial Council.

McLaughlin & Casey, James A. McLaughlin and Law-rence P. Casey for Appellants.

George C. Hadley, William Hosmer Peterson and Charles E. Spencer, Jr., for Respondent.

Harold W. Kennedy, County Counsel (Los Angeles), and A. R. Early, Deputy County Counsel, as Amici Curiae on be-half of Respondent.

PETERS, J.—Yor-Way Markets and E. W. Kennedy appeal from a judgment fixing the damages suffered by them as a result of respondent's exercise of its power of eminent domain. The trial court awarded appellants the sum of $5,800, which is the amount that the parties stipulated was the market value of the property actually taken plus the damage to the re-mainder as a result of the severance. In the stipulation, the appellants reserved the right to introduce evidence of addi-tional damage resulting from loss of business, customers and goodwill.

The trial court held that appellants had suffered no com-pensable damage not included in the stipulation. It rejected appellants' offer of proof relating to the claimed impairment of their right of access to the street upon which their property abutted. The court also rejected appellants' offer of proof of temporary damages which may be suffered by them during construction of the proposed street improvement.

The rulings of the trial court were correct and its judgment should be affirmed.

Appellants Kennedy and Yor-Way Markets are lessee and sublessee, respectively, of a parcel of land in the city of Azusa. This parcel, referred to as "parcel 5," is situated on the

*Court Commissioner, appointed as Judge pro tempore by Presiding Judge of the Superior Court.

northwest corner of Azusa Avenue, which runs north and south, and First Street, which runs east and west, and has 200 feet of frontage on Azusa Avenue and 140 feet on First Street. The following diagram* shows the general location of the property and of the route and nature of the improvement.

Appellants operate a supermarket and an adjoining customer parking lot on the property in question. The customers' entrance to the market is apparently from the parking lot, which is located along the northerly portion of parcel 5. Automobile entrances to the parking lot are located on Azusa Avenue and through an alley which runs along the west side of parcel 5 and intersects with First Street. A 10-foot wide strip along the entire eastern boundary of parcel 5 was condemned by respondent pursuant to a plan of street improvement and traffic relocation. The fair market value of the strip, as well as the diminution of the value of the remainder due to the severance of this strip, were agreed upon by the parties and are not involved in this dispute. But appellants contend that a new street has been interjected between parcel 5 and the street upon which it originally abutted, destroying their right of access to Azusa Avenue and the traffic which customarily travels thereon. Appellants claim that this alleged impairment of the right of access gives rise to a right to additional damages.

Before construction of the street improvement involved in this action traffic on Azusa Avenue traveled both north and south. There was no divider strip separating the traffic lanes, and customers traveling north on Azusa Avenue could make a left-hand turn into the supermarket parking lot. When the proposed change is completed this will no longer be possible. Azusa Avenue is to be widened from its original 47 feet curb-to-curb to 80 feet curb-to-curb from the corner of Azusa and First to a point north of parcel 5 (approximately midway between First Street and the next parallel street to the north, Second Street) where a new proposed connecting road will enter Azusa Avenue. This new road will connect Azusa with San Gabriel Avenue, which is parallel to Azusa and is the next intersecting street to the west.

San Gabriel Avenue is to become a southbound one-way street north of the new connecting street. South of the point of intersection of this new street and San Gabriel Avenue the latter will carry traffic in both directions. The connecting

*See following page for diagram.

street between San Gabriel and Azusa will be a one-way street running in a southeasterly direction. A metal divider strip will be placed in the middle of Azusa from the corner to the point where this connecting street intersects with Azusa and will be linked to the northeasterly boundary of this connecting street so that automobiles entering Azusa from this street will be able to proceed in a southerly direction only. From this point south, traffic, although divided, will proceed in both directions.

From the point of intersection with the connecting street north, Azusa Avenue will only be widened to 56 feet curb-to-curb and will become a one-way street, carrying traffic north. Thus two-way traffic will not exist on Azusa north of this point of intersection.

Traffic can enter Azusa in either direction from First Street. But in order for automobiles to travel south on Azusa from a point north of parcel 5 (so that they can enter the parking lot from Azusa Avenue) they must use this new connecting street which they can enter either from San Gabriel Avenue or from the alley which parallels Azusa to the west. Customers coming from the north must either use this connecting street from San Gabriel or travel south to First Street, east on First and then turn left from First into the alley. Customers traveling from the south must either turn left on First (west) to the alley or drive north on Azusa to Second, west on Second to San Gabriel and then use the connecting street. Three-way traffic lights will be constructed on Azusa, permitting left turns into First from both directions.

■ There can be no doubt that appellants have an easement right of direct access to Azusa Avenue which cannot be impaired by a public agency without compensation. "The courts of this state, from time immemorial and in cases too numerous to mention, have declared and enforced an abutting property owner's right to a free and convenient use of and access to the highway on which his property abuts. [Citing cases.]" (*People* v. *Ricciardi*, 23 Cal.2d 390, 397 [144 P.2d 799].) ■ But it is equally true that the right of a property owner to ingress and egress is not absolute. He cannot demand that the adjacent street be left in its original condition for all time to insure his ability to continue to enter and leave his property in the same manner as that to which he has become accustomed. Modern transportation requirements necessitate continual improvements of streets and relocation of traffic. ■ The property owner has no constitutional right

to compensation simply because the streets upon which his property abuts are improved so as to affect the traffic flow on such streets. If loss of business or of value of the property results, that is noncompensable. It is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions.

The compensable right of an abutting property owner is to direct access to the adjacent street and to the through traffic which passes along that street. (*People* v. *Ricciardi, supra.*) If this basic right is not adversely affected, a public agency may enact and enforce reasonable and proper traffic regulations without the payment of compensation although such regulations may impede the convenience with which ingress and egress may thereafter be accomplished, and may necessitate circuity of travel to reach a given destination.

''In the proper exercise of its police power in the regulation of traffic, a state or county may do many things which are not compensable to an abutting property owner, such as constructing a traffic island, placing permanent dividing strips which deprive an abutter of direct access to the opposite side of the highway, painting double white lines on the highway, or designating the entire street as a one-way street. (*McDonald* v. *State,* 130 Cal.App.2d 793, 799 [279 P.2d 777] ; *People* v. *Sayig,* 101 Cal.App.2d 890 [226 P.2d 702] ; *Holman* v. *State,* 97 Cal.App.2d 237 [217 P.2d 448] ; *Beckham* v. *City of Stockton,* 64 Cal.App.2d 487 [149 P.2d 296].)'' (*People* v. *Russell,* 48 Cal.2d 189, 197 [309 P.2d 10].) The Russell case held that the use of a parkway as a traffic separation strip between a state highway and a county road was a noncompensable traffic regulation.

Under these well-settled rules the appellants are not entitled to compensation because of the divider strip placed in the middle of Azusa. They have direct access to that street and to traffic traveling in one direction on that street. (See particularly *People* v. *Sayig, supra; Holman* v. *State, supra.*)

Nor can appellants complain because the relocation plan will divert some southbound traffic from Azusa in front of appellants' property. A property owner has no right to compensation because traffic is rerouted or diverted to another thoroughfare even though the value of his property is substantially diminished as a result. (*People* v. *Russell, supra; People* v. *Ricciardi, supra; People* v. *Sayig, supra; Holman* v. *State, supra.*)

In an attempt to avoid the application of these well-settled

rules appellants cite *People* v. *Ricciardi, supra,* and *Blumenstein* v. *City of Long Beach,* 143 Cal.App.2d 264 [299 P.2d 347]. Those cases are clearly distinguishable. In *Ricciardi* this court held that a street improvement which results in rerouting the highway itself in relation to the property which originally abutted upon it, rather than merely rerouting traffic from the highway, thus destroying any direct access to through traffic, entitles abutting owners to compensation. In that case the condemnees owned corner property at the intersection of Rosemead and Ramona Boulevards. Direct access to both intersecting boulevards existed. A strip of land was condemned and Rosemead Boulevard was widened to consist of four lanes, two in an underpass and a service lane on each side of the underpass. Rosemead Boulevard passed under Ramona Boulevard in such a manner that the condemnees' property was entirely cut off from the main stream of traffic. The only direct access that remained was to the service roads. Through traffic in *either* direction could reach the property in question only by detouring to one of the service roads. These roads could be reached from the through traffic lanes only at points considerably to the north or south of this property. Departing traffic could reach the through lanes in either direction only by first traveling along a service road until it joined with the through traffic.

The factual situation involved in *Blumenstein* v. *City of Long Beach, supra,* was somewhat similar. That case involved the construction of a freeway outlet between Blumenstein's property and Anaheim Street upon which Blumenstein's property had originally abutted. The new freeway outlet passed directly in front of the property, separating it from traffic (two-way) on Anaheim Street by a concrete construction approximately 5 feet wide. Traffic proceeding along the freeway outlet (three lanes of one-way traffic traveling west) merged with that on Anaheim Street at Harbor Avenue, the first intersecting street west of Blumenstein's property. The court held that the new freeway outlet could not be considered as the addition of lanes to Anaheim because it emptied its traffic into Anaheim at a point west of Blumenstein's property while the other end of the outlet connected with the freeway, not Anaheim Street. Thus Anaheim had been diverted from its abutting property, entitling owners thereof to compensation.

In each of these cases through traffic continued to travel

along the street upon which the owner's property had originally abutted. But after construction of the improvement the properties involved no longer abutted on any through traffic street. As a result of the improvement they were separated from through traffic by a new street which did not carry through traffic in either direction (*cf. McDonald* v. *State,* 130 Cal.App.2d 793 [279 P.2d 777]). In the case at bar there is no new street between parcel 5 and Azusa Avenue. Azusa has simply been widened and then connected, in part, to a new street to facilitate the flow of traffic. Through southbound traffic will continue to pass along the lanes abutting parcel 5.

It is immaterial that this southbound traffic comes from the new connecting street rather than traveling along the entire distance of Azusa. The connecting street will carry all through traffic which intends to travel south on Azusa. Through southbound traffic will travel along Azusa without interruption from the point of intersection of this connecting street and Azusa. Unlike *Ricciardi,* direct access to through traffic in one direction still exists. Unlike Blumenstein, all through southbound traffic on Azusa passes directly in front of parcel 5; the connecting street (carrying *through* traffic, not freeway outlet traffic) merges with Azusa at a point north of parcel 5, not at a point beyond. Appellants cannot complain that through southbound traffic must now travel a more circuitous route so long as direct access to through traffic on Azusa traveling in at least one direction continues to exist.

Appellants' offer of proof in the court below, as well as the reservation in the stipulation which preserved their right to offer evidence "concerning purported elements of damage involving loss of business, customers and good will," indicates that they are actually attempting to recover damages for injury to their business which may result from this street improvement. The trial court correctly ruled that the items reserved in the stipulation are noncompensable. (*Oakland* v. *Pacific Coast Lbr. etc. Co.,* 171 Cal. 392 [153 P. 705].) "A particular business might be entirely destroyed and yet not diminish the actual value of the property for its highest and best use." (*People* v. *Ricciardi, supra,* 23 Cal.2d at p. 396; *City of Los Angeles* v. *Geiger,* 94 Cal.App.2d 180 [210 P.2d 717].) Moreover, the location of the alley on the west boundary of parcel 5, which leads directly into the parking lot, greatly mitigates any inconvenience to appellants' customers. Under the circumstances here presented the right of direct access from parcel 5 to Azusa has not been

substantially impaired and appellants are not entitled to additional damages.

It should be mentioned that even if appellants were entitled to damages for impairment of their right of access, these damages were apparently included in the amount stipulated to by the parties. The stipulated sum of $5,800 covered "the fair market value of Parcel 5 together with all improvements thereon and the severance damage to the remainder by reason of the taking of Parcel 5 and the construction of the improvement in the manner proposed . . ."[1]

Appellants also offered to show that the improvement could be constructed in a manner which would be more convenient for them and which would cause less loss to their business. They suggested to the trial court that respondent could, and should, leave an opening in the divider strip so that northbound traffic on Azusa could continue to enter the parking lot directly from Azusa. They also suggested that a traffic light should be installed at the crosswalk which is to be located near the parking lot entrance. This evidence would have been irrelevant. The convenience of an individual is not the test of the propriety of a police regulation. Police powers are exercised for the welfare of the public as a whole. Traffic regulation is a function of government for the benefit of the public, not for the benefit and to meet the convenience of an individual property owner. The Department of Public Works has promulgated a reasonable large-scale plan for street improvement to facilitate the flow of traffic. Appellants cannot complain, legally, because they would have preferred that the improvement be constructed in a different manner.

Appellants further contend that the trial court erred in rejecting their offer of proof of injury which may result during the period of construction. The improvement has not yet been constructed, but respondent has fully set forth how the improvement is to be constructed. Appellants offered to prove by expert testimony that the improvement cannot be constructed in the time estimated by respondent. Under re-

---

[1] Although the stipulation refers to the "Taking of Parcel 5" it is obvious that the parties were referring only to that portion of parcel 5 which was actually condemned.

The term "severance damages" has been used by both the court and counsel to refer to impairment of the right of access as well as to injury to the remainder resulting from severance of a portion of the property. It is probable that the parties intended the term to have this meaning in the stipulation. However, technically the term means only that damage caused to the remainder due to actual severance.

spondent's proposed construction plan Azusa Avenue will be torn up in the area of parcel 5 for approximately 90 days. One lane of southbound traffic is to remain open at all times, and direct access from this lane to the parking lot on parcel 5 is guaranteed. Appellants offered to prove that this construction could not be done in 90 days but would take from 6 to 12 months, and that the contractor probably would put plates over the excavation, narrowing the entrances to the lot, so that for practical purposes access from Azusa will not be possible. They contend that this actual process of construction will cause them to suffer additional damage for which they should be compensated.

 Temporary injury resulting from actual construction of public improvements is generally noncompensable. Personal inconvenience, annoyance or discomfort in the use of property are not actionable types of injuries. (*Heimann* v. *City of Los Angeles,* 30 Cal.2d 746 [185 P.2d 597] ; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614 [37 P. 750, 42 Am. St.Rep. 149] ; *Beckham* v. *City of Stockton, supra,* 64 Cal.App. 2d 487 [149 P.2d 296].) ''It would unduly hinder and delay or even prevent the construction of public improvements to hold compensable every item of inconvenience or interference attendant upon the ownership of private real property because of the presence of machinery, materials, and supplies necessary for the public work which have been placed on streets adjacent to the improvement.'' (*Heimann* v. *City of Los Angeles, supra,* 30 Cal.2d at p. 755.) Appellants are not entitled to compensation for temporary interference with their right of access, provided such interference is not unreasonable, that is, occasioned by actual construction work. It is often necessary to break up pavement, narrow streets and provide inconvenient modes of ingress and egress to abutting property during the time streets are being repaired or improved. Such reasonable and temporary interference with the property owner's right of access is noncompensable.

 It is true that damages resulting from unnecessary and substantial temporary interference with the property owner's rights in the property may be compensable. Thus, in *Heimann* v. *City of Los Angeles, supra,* 30 Cal.2d 746, 755, it was stated to be the rule that ''unnecessary and substantial temporary interference with such property rights or an actual though temporary invasion of the right of possession of private property during construction'' is compensable. (See also *Jacobsen* v. *Superior Court,* 192 Cal. 319, 328 [219 P. 986,

29 A.L.R. 1399]; *Lane v. San Diego Elec. Ry. Co.*, 208 Cal. 29, 34 [280 P. 109].) This would, of course, include additional unnecessary and substantial damage caused by reason of the improvement not being constructed as originally planned.

But such damages cannot be recovered until they have occurred. They may never occur. Until they have occurred such damages are purely speculative, and, as was held in *People* ex rel. *Dept. of Public Works* v. *Schultz Co.*, 123 Cal. App.2d 925, 935 [268 P.2d 117], "[r]emote, speculative, or conjectural elements of damage cannot be submitted to or considered by the jury."

While the general rule is that, in condemnation actions, the damages should be fixed once and for all at the time of the main trial, that rule is not inflexible. A condemnation award is based on the assumption that the improvement will be carried out as proposed (*People* ex rel. *Dept. of Public Works* v. *Schultz Co.*, *supra*, 123 Cal.App.2d at p. 934).

When the condemnation action is tried before the improvement is constructed, and substantial although temporary interference with the property owner's rights of possession or access occurs during construction, the property owner may maintain a subsequent action for such damage occurring during construction. (*People* ex rel. *Dept. of Public Works* v. *Schultz Co.*, *supra*; *People* v. *Adamson*, 118 Cal.App.2d 714 [258 P.2d 1020].) As applied to the instant case, this means that if the improvement is not carried out as proposed, and, if as a result, unnecessary or unreasonable interference with appellants' rights of possession or access occurs, then they may bring an action for such damages after they have occurred.

But such damages cannot be recovered before they have occurred, for the obvious reason that they may never occur. Appellants sought to prove that the improvement cannot be constructed in the manner and time proposed, and that, as a result, unreasonable damage will occur. Such possible damages are too speculative to be recoverable in this action. Of course, any compensable damages caused by the improvement as proposed were necessarily included in the stipulation fixing damages as they then existed. The improvement has not yet been constructed. Whether or not there will be any further and improper interference with appellants' rights at this time is uncertain and highly conjectural. If unreasonable interference does occur during construction that was not included in the award, damages may be recovered in a subse-

quent action, but no cause of action for such temporary damages can arise until it can be ascertained that a compensable injury has occurred. Thus, the trial court correctly held that evidence as to speculative temporary damages resulting from an alleged, and equally speculative, deviation from the proposed plan could not be introduced before construction work had commenced. Appellants' offers of proof were properly rejected by the trial court.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., White, J., and Dooling, J. pro tem.,* concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Ashburn in the opinion prepared by him for the District Court of Appeal in *People* v. *Ayon (Yor-Way Markets)*, (Cal.App.) 1 Cal. Rptr. 107.

Appellants' petition for a rehearing was denied June 14, 1960. McComb, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.