[No. B097484. Second Dist., Div. Two. Feb. 19, 1998.]

NIKOLAOS LIONTOS et al., Plaintiffs and Appellants, v.
COUNTY SANITATION DISTRICTS OF LOS ANGELES COUNTY et
al., Defendants and Respondents.

## COUNSEL

Alan G. Novodor for Plaintiffs and Appellants.

Mark C. Hargan, Knapp, Marsh, Jones & Doran, Daniel V. Hyde and Paul J. Beck for Defendants and Respondents.

## OPINION

**ZEBROWSKI, J.**—Plaintiff and appellant is a general partnership doing business as Monk's CharBurgers (Monk's). Defendants and respondents are the County Sanitation Districts of Los Angeles County (the Districts) and Steve Bubalo Construction Co. (Bubalo). The Districts and Bubalo were involved in a sewer construction project near the site of Monk's fast-food restaurant. Monk's alleged as follows: The project was originally scheduled to take about three months to complete. As a consequence of the construction work, traffic in the area was restricted by barricades and heavy equipment. The restrictions on traffic caused decreased business at Monk's restaurant. After two months of construction activity, and before the project was completed, construction activity at the site ceased. Nine months passed. During these nine months of inactivity at the site, the Districts and Bubalo kept the barriers and heavy equipment in place. Monk's suffered damage due to the continued restrictions on access to Monk's restaurant during this period. After the nine months of inactivity, the Districts and Bubalo resumed construction and completed the project. Monk's sought recovery for damages to its business, primarily in the form of lost revenues.

The Districts and Bubalo moved for summary judgment, which was granted. All parties agree that *People* v. *Ayon* (1960) 54 Cal.2d 217 [5 Cal.Rptr. 151, 352 P.2d 519] is on point. ██ *Ayon* stated, "The compensable right of an abutting property owner is to direct access to the adjacent street and to the through traffic which passes along that street. *(People* v. *Ricciardi* [(1943) 23 Cal.2d 390 [144 P.2d 799]].) If this basic right is not adversely affected, a public agency may enact and enforce reasonable and

proper traffic regulations without the payment of compensation although such regulations may impede the convenience with which ingress and egress may thereafter be accomplished, and may necessitate circuity of travel to reach a given destination." (*People* v. *Ayon, supra,* 54 Cal.2d 217, 224.) This holding is buttressed by *Rose* v. *State of California* (1942) 19 Cal.2d 713, 737 [123 P.2d 505]: "The diversion of traffic is not a proper element to be considered in computing . . . damages inasmuch as a landowner has no property right in the continuation or maintenance of the flow of traffic past his property." It is clear, therefore, that Monk's has no right to recover simply because traffic was diverted away from Monk's restaurant or because access to Monk's restaurant was restricted.

The key factor in this case is the delay during which the project site sat idle, but the barriers and heavy equipment remained in place to restrict access to Monk's restaurant. *People* v. *Ayon, supra,* 54 Cal.2d 217, concerned street improvement work which restricted access to a market. The market owner sought damages for temporary injury caused by construction of the improvements. ■ As to the temporary injury, the court stated: "Temporary injury resulting from actual construction of public improvements is generally noncompensable. Personal inconvenience, annoyance or discomfort in the use of property are not actionable types of injuries. [Citations.] 'It would unduly hinder and delay or even prevent the construction of public improvements to hold compensable every item of inconvenience or interference attendant upon the ownership of private real property because of the presence of machinery, materials, and supplies necessary for the public work which have been placed on streets adjacent to the improvement.' [Citation.]" (*Id.* at p. 228.) Damages for temporary interference with the right of access are therefore not recoverable *"provided* such interference is not unreasonable, *that is occasioned by actual construction work."* (*Ibid.,* italics added.)

■ Thus Monk's cannot recover simply because access to Monk's restaurant was temporarily impeded by reason of the presence of construction barriers and heavy equipment, *provided that this interference was occasioned by actual construction work.* Here Monk's alleged that construction work ceased for nine months, yet the barriers remained. The Districts and Bubalo contend in response that the delay was only seven months, but that is an immaterial distinction for present purposes. In their motions for summary judgment, the Districts and Bubalo contended that the delay occurred because the pipe being installed began cracking. Construction then ceased while testing proceeded to determine the cause of the cracking. The motions were based primarily upon the declaration of James D. Hansen, a "resident engineer assistant" who was "involved with the supervision of the construction project." Mr. Hansen declared that installation of the pipe was halted on

October 7, 1993, "so that the Districts, Bubalo and the pipe manufacturer could determine what caused the pipe to crack . . . ." Mr. Hansen also declared that "[s]hortly after the work was halted, the Districts directed Bubalo to hire a consulting engineer to determine how to correct the cracked pipe." According to the declaration, "Bubalo complied with the Districts' request, and on December 8, 1993, Bubalo drilled six (6) core samples of the new concrete pipe in order to conduct tests . . . ." The declaration does not explain what occasioned the two-month delay between the Districts' request and Bubalo's drilling of the core samples which, apparently, were necessary to determine the cause of the pipe cracking. The declaration continues that the Districts and Bubalo "came to a decision on how to correct the cracked pipe" on March 2, 1994, that work recommenced on April 5, 1994, and that work was completed on October 7, 1994.

The declaration does not explain exactly what was done to determine the cause of the cracking, why it took as long as it did, why it could not reasonably have been done sooner, why replacement pipe could not have been used, etc. Instead, the declaration states simply that "It is clear that from the date that construction of the Project began, to the date that it ended, the Districts made diligent efforts to complete construction of the Project in a timely manner." Monk's objected to this statement on ground that it was conclusionary, but the trial court overruled the objection. This ruling was in error. The contention by Mr. Hansen that the Districts made "diligent efforts to complete construction . . . in a timely manner" was not a statement of fact, but rather one of Mr. Hansen's opinion. Such an opinion would necessarily be based upon information concerning exactly what the Districts and Bubalo did in order to determine the cause of the cracking, when they did it, why it took so long, why replacement pipe could not be substituted, etc. Although such information might be known to Mr. Hansen, no such information was contained in his declaration. Hence there was no evidence that the Districts and Bubalo had proceeded diligently. Instead, the evidence showed only a seven- or nine-month hiatus in construction, occasioned by the alleged need to determine the cause of the pipe cracking.

As to the reason why the barriers and heavy equipment were left in place during the seven- or nine-month hiatus in construction, Mr. Hansen's declaration stated "the Districts and Bubalo considered it both expedient and necessary to leave certain heavy equipment such as loaders and backhoes on the site in order that such heavy equipment would be nearby when construction on the project resumed." "[T]he Districts decided" according to the Hansen declaration, "that removing all the barricades . . . and the heavy equipment near Monk's would be prohibitively expensive and inefficient" and "would not only add considerable additional expense to the Project, but

would also have caused considerable delay to the Project." No specific figures were provided.

The parties agree that there was no blockage of direct access to Monk's restaurant from the streets abutting Monk's property. (Cf. *Brumer* v. *Los Angeles County Metropolitan Transportation Authority* (1995) 36 Cal.App.4th 1738, 1751-1752 [43 Cal.Rptr.2d 314].) However, the evidence also shows that a primary impediment to access to Monk's restaurant was the blockage of the intersection of Vermont Avenue and 228th Street, on one corner of which Monk's is located. The motion made by the Districts and Bubalo offered no specific explanation why this intersection remained blocked for the seven or nine months during which construction at the site had ceased. In addition, the Districts and Bubalo offered no information regarding what difficulty or expense would have been incurred in mitigating the blockage of access to Monk's. Instead, their showing was essentially that they did nothing to mitigate the blockage for reasons of their own convenience. Nor was there any effort in the moving papers to explain what factors made the Districts or Bubalo believe that finding the solution to the pipe cracking problem would take any particular period of time.

In granting the motions for summary judgment, the trial court relied on *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746 [185 P.2d 597] for the proposition that a property owner can recover for impairment of access caused by public improvement work only when the impairment is unnecessary and substantial. The trial court first granted summary judgment based on a finding that "the interference was not substantial." Precisely what measure of substantiality was applied is not clear, but it is clear that the court focused on physical substantiality. Monk's contends that it lost revenue as a consequence of the Districts' and Bubalo's interference with access to Monk's restaurant. Monk's did not present evidence of specific amounts, but did state that it lost business during the hiatus in construction and was almost driven out of business. Monk's thus contends that the fact of business loss is evidence that the impairment of access was substantial. The Districts and Bubalo presented no showing of lack of substantiality as reflected, for example, by only a de minimis impact on Monk's revenues. From a physical perspective, there was no showing of the effect on actual traffic patterns created by the barricades and heavy equipment. The Districts and Bubalo did not present evidence to support the counterintuitive proposition that reducing the traffic to only one lane north and one lane south on Vermont, blocking the intersection at 228th Street to prevent through traffic on 228th Street from east to west or vice versa, placing heavy equipment along the perimeters of the traffic lanes, placing barricades down the middle of Vermont for several hundred yards and thus preventing left turns for that stretch, etc.,

created no traffic congestion and hence had no substantial effect on traffic flows and ease of access to Monk's property. In opposition, Monk's contended that the barriers "caused tremendous traffic congestion northbound on Vermont Avenue." While "tremendous" may be a matter of degree, substantiality is also a matter of degree and there was no showing that the interference was insubstantial. Thus although an issue of substantiality in this context might be determined on a summary judgment motion, the record here was not adequate to allow such a determination.

The trial court granted summary judgment on the additional grounds that the interference was reasonable. The trial court stated in its minute order that *Ayon* "held that an interference is reasonable if it is accompanied by actual construction work. The undisputed facts also show the impairment was necessary in that there was actual construction work at all times." The trial court thus implicitly held that the period during which pipe testing was taking place, but no construction at the site was underway, constituted a period of "actual construction work." This record does not warrant such a conclusion. It is fair to say that pipe testing became a de facto part of this project when the pipe began cracking after installation began. Assuming that there is no liability for beginning a disruptive project with unproven pipe, or for not substituting appropriate pipe in a timely manner, the Districts and Bubalo might prevail by showing that the time consumed by the pipe testing was reasonable and necessary. The record presented, however, makes no such showing. Instead, it shows a two-month initial delay before core samples were taken. This may be explainable, but it was not explained. The record then shows, depending upon which version of the facts is accepted, either an additional five-month or an additional seven-month delay before the pipe cracking problem was solved. This may also be explainable, but it was not explained. Moreover, the pipe-testing activity occurred (except for the core sampling) off-site. During that period, the obstructions remained in place. The record does not establish that this was reasonable. The law is clear that adjacent property owners cannot complain about the consequences of reasonable public improvement works on public streets, at least so long as access to their property is not completely blocked. However, the law does allow recovery for interference with access when the interference is both substantial and unnecessary. The unembellished record here could support a finding that the impairment of access during the construction hiatus was both substantial and unnecessary. One inference would be that the Districts and Bubalo, for purposes of their own convenience and expediency, to save expense to themselves, and in disregard for the consequences to others, chose to allow an unnecessary disruption of traffic to continue, expecting all adverse consequences to fall upon local property owners. Indeed, it is difficult to imagine, in view of the District's and Bubalo's interpretation of

the law, what incentive they might have to avoid or to mitigate injury to adjacent property owners like Monk's. Instead of acknowledging some duty to minimize injuries to others, the Districts and Bubalo appear to contend that they have no responsibilities in this regard. The record here would also support a finding that the impairment of access to Monk's was sufficiently substantial to render it impractical for customers to patronize Monk's restaurant to such a degree that it had a substantial impact on Monk's operations. If the Districts and Bubalo can demonstrate that a seven- or nine-month delay was necessary in this project, they may have a defense. But the facts which support this defense must be placed in evidence to defeat Monk's claim. On the record presented, there are triable issues of material fact concerning the actual extent, necessity of, and substantiality of the impairment of access to Monk's restaurant.

## DISPOSITION

The summary judgments are reversed. Plaintiff and appellant to recover costs on appeal.

Boren, P. J., and Fukuto, J., concurred.