[Civ. No. 25791. Second Dist., Div. Three. Sept. 20, 1962.]

AGNES GOYCOOLEA, Plaintiff and Respondent, v. CITY OF LOS ANGELES, Defendant and Appellant.

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Weldon L. Weber and Oliver C. Hardy, Deputy City Attorneys, for Defendant and Appellant.

Frederick I. Firschling and Willard M. Reisz for Plaintiff and Respondent.

FORD, J.—The City of Los Angeles has appealed from a judgment against it in an action in inverse condemnation. The principal question to be resolved is whether, as a result of changes made in the street upon which the plaintiff's property abuts, the plaintiff has suffered damage to her property rights for which compensation must be paid.

The plaintiff's property is located on the west side of Castelar Street between Sunset Boulevard and Ord Street, not far from the Civic Center of Los Angeles. The lot has a frontage on Castelar Street of approximately 52 feet; it is 164 feet in depth. Before the changes made by the city, the property on both sides of the street was in a "depressed" residential area; most of the houses, including the one-story frame house on the plaintiff's property, were probably more than 50 years old. The width of Castelar Street was then 80 feet, consisting of a sidewalk and parkway on each side of a width of 12 feet and a paved roadway 56 feet wide.

In 1959 the city completed the construction of an overpass or viaduct across Sunset Boulevard. That structure connects with Hill Street to the south and the roadway thereon is known as Hill Street. As set forth in the findings of fact, the viaduct is "connected to the said Castelar Street by means of a ramp of earth, the high point of which is at the northerly line of Sunset Boulevard, and the terminus of which is approximately at Ord Street, one block north of the said Sunset Boulevard; that the said fill for the said ramp was made upon the surface of Castelar Street and upon certain properties acquired for that purpose which then abutted the said Castelar Street on the east; that the said fill for the said ramp completely occupied the easterly half of Castelar Street as it

existed before the construction of the said viaduct, and was sloped so as to occupy a substantial portion of the westerly half of Castelar Street as it existed before the construction of the viaduct;[1] that the embankment of said viaduct opposite plaintiff's property is from 10 to 13 feet above the grade of the portion of Castelar Street still remaining in front of the plaintiff's property; that the said Castelar Street is now reduced in width to 29 feet in front of plaintiff's property, including curbs, sidewalks, parking and roadway,[2] . . . ; that the roadway on said viaduct has a present grade of 8% down north and Castelar Street has a present grade of 8.14% down north whereas Castelar Street as it existed before the construction of said viaduct had a grade of 6.5% down north; . . . ." A photograph which was received in evidence at the trial and which illustrates the nature of the change is made a part of this opinion; it is a view to the south from Ord Street toward Sunset Boulevard.

The trial court further found that Castelar Street "was formerly the direct connection to the Pasadena Freeway" which is to the north of the property, but that because of the condition resulting from the construction of the viaduct

---

[1] As stated in the appellant city's opening brief: "An earth fill slope and curb occupy the next 11 feet westerly of said center line [of Castelar Street as it existed before the change] to the top of the ramp fill."

[2] Twenty-four feet of the 29 feet are now used for the paved roadway and 5 feet for the sidewalk in front of the plaintiff's property.

the city "has caused the said remaining portion of Castelar Street to be a one-way street proceeding to the south." Another finding of fact was that, "due to the construction of the viaduct, ramp, fill and supports, it is no longer possible to proceed into Sunset Boulevard from Castelar Street, making a left turn to the east with comfort, convenience or safety."

The trial court determined that the highest and best use of the property was for "commercial or industrial purposes" but it found that, because of the narrowing of the street directly in front of the plaintiff's property, "ingress, egress and access to plaintiff's property from said Castelar Street by large vehicles of the type that would be used in its commercial development is substantially hindered and impaired requiring construction of driveways or openings into the front portion of plaintiff's property wider than would otherwise be required, in order to permit vehicles to make proper righthand turns into said property." It was also found that "as a proximate result of the construction of said viaduct above the grade of plaintiff's lot the view to, of and from said premises to the east and to the southeast has been cut off completely at the ground level" and that the plaintiff's property has been "substantially deprived" of light and air.

 An owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property. That easement is one of ingress and egress to and from his property or, generally, the right of access over the street to and from his property. If there is a substantial impairment of that right, compensation must be given. (*Bacich* v. *Board of Control,* 23 Cal.2d 343, 349-350 [144 P.2d 818].) In the *Bacich* case it was said (23 Cal.2d, at p. 352): "The extent of the easement of access may be said to be that which is reasonably required giving consideration to all the purposes to which the property is adapted." (See also *People* v. *Murray,* 172 Cal.App.2d 219, 225 [342 P.2d 485].)

 There was credible evidence that the narrowing of the pavement on the westerly side of Castelar Street from 28 to 24 feet constituted a substantial impairment of the plaintiff's right of access. A compensable impairment of that nature was determined to exist under the facts in *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505], wherein the Supreme Court said at page 729: "There is sufficient evidence to support the finding of unreasonable interference in

the present case. One witness testified that the 14 foot lane for vehicular traffic and the 3.6 foot lane for pedestrians was not capable of supplying the necessary ingress and egress for this type of industrial property, and that because of the non-accessibility the property could not be put to some uses after the construction that it could have been put to before. Other witnesses spoke of the difficulty of gaining access to plaintiffs' property under the present circumstances, and the trial judge himself examined the premises. It was found that the lane provided was too narrow for two vehicles to pass each other if traversing thereon in opposite directions. In the face of this evidence and in view of the fact that the trial judge examined the property, it cannot be said that the finding of interference is unsupported by the evidence." (See also *People* v. *Russell*, 48 Cal.2d 189, 195-196 [309 P.2d 10].)

In the present case a real estate appraiser, who was called as a witness on behalf of the plaintiff, testified that the property was in a zone designated as "M-2," a zone in which "medium industrial use" was permitted. While he considered the property "as a manufacturing location," it was his opinion that it was better suited for use as the site of an office building. In response to a question by the trial judge as to whether the diminution in width of the street caused impairment of the use of the property for commercial or industrial purposes insofar as the facility of entry thereon by trucks or commercial vehicles was concerned, the witness testified as follows: "Yes, if this property were being used as an industrial property, I believe that big semis, as they are called, would have a little difficulty in making a turn into that driveway, in making a 24-foot turn with a 40-foot trailer, as many, many of them are, and a 15-foot tractor in front; yes, I think there would be some difficulty in turning into an industrial property." He further said that more of the frontage would have to be used for a driveway because of the restriction on turning. On cross-examination he stated that he had not studied the problem from an engineering standpoint but that he had made observations with respect thereto while studying industrial properties. He then testified as follows: "Q. From such studies, would it be your opinion . . . that large trucks and semitrailers of the description you have made would be able to make such a right turn into the subject premises on a 28-foot paved westerly half of Castelar Street? A. I don't think there is any question that with the adeptness of drivers that they could pull up

and then back their tractor, or rather their trailer, into this property. . . . Or they could pull in straight and then have to back out back into the intersection, of course. Q. Is it then your opinion that by the reduction in that side of the street by four feet, that the operators who are so adept would be unable to make such a turn? A. Oh, no, I wouldn't say they would be unable to. It would be more difficult for them to. Q. Maybe a little sharper turn, or maybe a little more thinking about it? A. It would be more difficult.''

■ The trial judge, as the trier of fact, viewed the plaintiff's property and the public improvement heretofore described. His observations constituted evidence which he properly considered, together with the other pertinent evidence, in resolving the issues presented to him. (*County of San Diego* v. *Bank of America,* 135 Cal.App.2d 143, 149 [286 P.2d 880].)

■ Where there is evidence to support a finding that substantial and unreasonable interference with the landowner's easement of access or right of ingress and egress has been caused as the result of a change in the street on which his property abuts, an appellate court will not say as a matter of law that such finding is erroneous. (*Rose* v. *State of California, supra,* 19 Cal.2d 713, 728.) The present case is of that nature.

■ With respect to the street in front of his land, an abutting owner has an easement of light and air. (*Williams* v. *Los Angeles Ry. Co.,* 150 Cal. 592, 594-595 [89 P. 330]; see *People* v. *Symons,* 54 Cal.2d 855, 860 [9 Cal.Rptr. 363, 357 P.2d 451]; *Rose* v. *State of California, supra,* 19 Cal.2d 713, 727.) He has also an easement of reasonable view of his property from the street or highway. (*People* v. *Ricciardi,* 23 Cal.2d 390, 404 [144 P.2d 799]; *Williams* v. *Los Angeles Ry. Co., supra,* 150 Cal. 592, 594-595; *People* v. *Loop,* 127 Cal.App.2d 786, 803 [274 P.2d 885]; see Note 90 A.L.R. 793, 794.) While the interference with the easement of light and air caused in the present case by the embankment does not appear to have been of the magnitude of that evident in *Anderlik* v. *Iowa State Highway Com.,* 240 Iowa 919 [38 N.W.2d 605], it cannot be said that the evidence of that interference was of such an insignificant nature that the city suffered prejudice requiring a reversal of the judgment because of the finding that the plaintiff's property has been ''substantially deprived'' of light and air. ■ With re-

spect to the easement of reasonable view of the property from the public street, it was for the trial court to determine whether the embankment has unreasonably diminished the visibility of the plaintiff's property, insofar as travelers on the elevated portion of the thoroughfare are concerned, so as to cause a substantial impairment of that right. (See *People* v. *Ricciardi, supra,* 23 Cal.2d 390, 404.)

The plaintiff's expert witness expressed the opinion that the market value of the property immediately before the construction was $20,000 and that the market value thereafter was $10,700. The expert witness for the city stated that his opinion was that such values were, respectively, $16,250 and $17,000. The trial court found that the market value immediately prior to the construction of the public improvement was $18,400 and that such value thereafter was not in excess of $15,000. The judgment was in the sum of $3,400, together with interest thereon from the date of completion of the improvement. The city asserts that the evidence was insufficient to support the determination of the trial court because the opinion of the plaintiff's witness as to diminution in value was based upon noncompensable items of asserted damage.

In the course of the trial, counsel for the city made a motion to strike the testimony of the plaintiff's expert witness ''wherein he stated that he considered that in part the depreciation of the subject property, of the diminution in value, was due to the construction of the one-way street, the diversion of traffic and the circuity of travel made necessary by it, and in addition the effect of the overpass itself across Sunset Boulevard, excluding therefrom the approach which is in front of the subject property. . . .'' Before the court made its ruling on the motion, the witness testified further as follows: ''THE COURT: If you were to consider this as a matter of valuation of the fair market value, and explained it in the light, of course, that the elements for bare circuity of route beyond the block and these other things were not elements of compensation or elements to be considered in market value, would you reach any other conclusion as to what the market value was after this improvement was completed than you did? THE WITNESS: No, sir. THE COURT: And why? THE WITNESS: Well, I don't quite understand the question, your Honor, except that if I did consider circuity beyond the end of the block, did I include such elements in my conclusion of damage? THE COURT: Yes.

THE WITNESS: No, I did not. My conclusion of damage in this case is ascribed wholly to the elements that lie within the block in my consideration. My final opinion of value of the diminution is based on that within the block. THE COURT: Is it based in any part upon the determination that traffic is at present restricted, it is one-way traffic on this particular street? THE WITNESS: No; as I testified I—the elements that I testified to are things that an informed buyer unquestionably would consider, but as far as the one-way traffic being the cause of this damage, no, it is not. It is an element of consideration of thinking that an informed buyer would think about.'' The motion to strike was denied.

It is true, of course, that a street may be designated as a one-way street without giving rise to an obligation to pay compensation. (*People* v. *Russell, supra,* 48 Cal.2d 189, 197; see *People* v. *Ayon,* 54 Cal.2d 217, 224 [5 Cal.Rptr. 151, 352 P.2d 519].) Moreover, as said in *People* v. *Ricciardi, supra,* 23 Cal.2d 390, at pages 401-402: ''. . . damages may not be allowed for diminution of property value resulting from highway changes causing diversion of traffic, circuity of travel beyond an intersecting street, or other noncompensable items.'' (See also *People* v. *Russell, supra,* 48 Cal.2d 189, 195; *Blumenstein* v. *City of Long Beach,* 143 Cal. App.2d 264, 270 [299 P.2d 347].) But the record does not support the city's assertion that the trial court based its determination of the amount of damages suffered by the plaintiff upon noncompensable matters. In this connection, it is to be noted that the difficulty of making a left turn into Sunset Boulevard was caused by the nature of the construction of the improvement at Sunset Boulevard; to that extent there was interference with access to the next intersection at the end of the one-way street upon which the plaintiff's property now abuts. (See *Rosenthal* v. *City of Los Angeles,* 193 Cal.App.2d 29, 31-32 [13 Cal.Rptr. 824].) Apropos with respect to the city's contention is the reasoning of the Supreme Court in *Rose* v. *State of California, supra,* 19 Cal.2d 713, at pages 742-744, as follows: ''In any event, it does not appear from the entire record that the error, if any, was prejudicial. It must be remembered that there is no indication from the findings of the trial court that it took into consideration the diversion of traffic as an element of damage. Plaintiffs had two valuation witnesses in addition to Woodward, and the amount of damages found to have been suffered was considerably less than that appearing from their

testimony. The court viewed the premises and arrived at its own judgment as to the extent of the damages suffered. In *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co., supra,* [128 Cal.App. 743 (18 P.2d 413)] evidence of value was improperly admitted because elements were considered that should not have been, nevertheless the court held that the error was not prejudicial, stating at page 765:

" 'It may therefore be freely conceded that the above-mentioned evidence and other evidence in the record should have been stricken, but it does not necessarily follow that the action of the trial court in admitting such evidence and thereafter failing to strike the same constituted prejudicial error requiring a reversal. In *City of Stockton* v. *Ellingwood, supra* [96 Cal.App. 708 (275 P. 228)], at page 742, the court quotes from [*Conan* v. *Ely*] *City of Ely* v. *Conan,* 91 Minn. 127 [97 N.W. 737], as follows: "Ordinarily the admission or exclusion of opinion evidence, where it is not of a determinative character, is not regarded as sufficient to justify a reversal." This is more particularly true where, as in the present case, the cause was tried by the court sitting without a jury and it does not appear that the trial court's determination of market value was in any way influenced by the testimony erroneously admitted. While the objectionable testimony contained figures in excess of the highest estimates found in the competent testimony on market value, the trial court fixed the awards at figures far below the lowest estimates of market value found in any of the testimony, competent or incompetent, offered by respondents. It is quite apparent that the trial court made its own determination of the market value of the land, using the opinions on this subject merely as an aid for that purpose and giving to such opinions only the weight to which they appeared to be entitled. This was entirely proper and we find no prejudicial error in the admission of the incompetent testimony referred to or in the refusal to strike out said testimony.' It was held in *Reclamation Dist. No. 730* v. *Inglin,* 31 Cal.App. 495 [160 P. 1098], that a denial of a motion to strike valuation evidence was not prejudicial error although based on improper considerations, inasmuch as the jury's verdict was not in excess of the amount fixed by that evidence. Injury will not be presumed from error. The appellant has the burden of showing wherein it was injured. This it has failed to do. Valid and admissible evidence amply supports the judgment, and we cannot say the result would have been different, if de-

fendants' motion had been granted. The amount of the judgment, $5,000, indicates that the court did not base its decision on Woodward's testimony of damages amounting to $8,040. There is sufficient variance between the two figures to indicate that the judgment was based on the competent testimony of Andrade and Leidig, and the court's view of the premises and other evidence in the record. The fact that the trial court denied the motion to strike does not necessarily show that its judgment was based on Woodward's erroneous presumption of the compensable elements involved. If it did, practically every case involving the improper admission of evidence would be reversed because of prejudicial error.''

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.