[No. B074822. Second Dist., Div. Seven. July 24, 1995.]

STANLEY BRUMER, as Cotrustee, etc., et al., Plaintiffs and Appellants,
v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION
AUTHORITY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

1740

COUNSEL

Sullivan, Workman & Dee, John J. Dee and Henry K. Workman for Plaintiffs and Appellants.

Nossaman, Guthner, Knox & Elliott, James C. Powers and Abraham C. Meltzer for Defendant and Respondent.

OPINION

JOHNSON, J.—This appeal arises from an action for inverse condemnation. Plaintiffs' complaint alleged an impairment of access from their property onto Flower Street caused by the construction of the Long Beach-Los Angeles Rail Transit Project known as the "Blue Line." The trial court found no substantial impairment of access and denied relief. We affirm.

## FACTS AND PROCEEDINGS BELOW

Plaintiffs, Stanley Brumer and Gloria M. Brumer, as trustees of the Brumer Living Trust, are the owners of property located at the northeast corner of Flower Street and Venice Boulevard in Los Angeles (the Property). The property extends for 50 feet along Flower Street and 150 feet along Venice Boulevard. The back of the property extends 50 feet along Pembroke Lane.

The property is improved with a one-story commercial building consisting of eight stores. Two of the stores front on Flower Street. The building covers the entire property. There is no driveway access to, or parking area on the property.

Prior to construction of the Blue Line, cars on Flower Street could travel directly past plaintiffs' property. At that time limited street parking was also available on Flower Street. However, street parking in front of plaintiffs' property was virtually nonexistent. A portion of the frontage was consumed by the pedestrian crosswalk at the corner of Venice Boulevard and Flower Street. In addition, there was a fire hydrant in front of plaintiffs' property. Thus, prior to construction of the Blue Line, legal street parking across the plaintiffs' 50-foot frontage on Flower Street was prohibited except for perhaps at the northern most edge of plaintiffs' property where there was space to park a single car.

Defendant, Los Angeles County Metropolitan Transportation Authority, as successor to the Los Angeles County Transportation Commission, installed rails for the Blue Line in the traffic lane of Flower Street which

passes directly in front of plaintiffs' property. This lane is now for the exclusive use of the Blue Line, and curbside traffic or parking is no longer available. Traffic on Flower Street in now one-way.

The Blue Line rails are installed at grade level, flush with the existing street. However, plaintiffs' property is now separated from vehicular traffic on Flower Street by a metal guard rail at the edge of the sidewalk to protect pedestrians and prevent jaywalking, two sets of metal rail lines and a raised concrete divider which separates the rail lines from the regular vehicular traffic. Neither the concrete strip nor the pedestrian guard rail extends into the Venice Boulevard/Flower Street intersection. Vehicular and pedestrian traffic on Venice Boulevard and Pembroke Lane remain unchanged.

In November 1990, plaintiffs filed suit for inverse condemnation. Their complaint alleged their easement of access to Flower Street had been substantially impaired by construction of the Blue Line. Plaintiffs asserted they previously had direct access to Flower Street from their property but now the property abuts the Blue Line right-of-way. This change, plaintiffs alleged, denied them all vehicular access to and from the property on Flower Street.

Defendants moved for summary judgment on the ground the privilege of curbside parking was not an actionable impairment of access as a mater of law. Plaintiffs opposed the motion, asserting their loss of access to Flower Street constituted a substantial impairment of their easement of access as owners of property abutting Flower Street. The trial court's tentative ruling was to grant the motion for plaintiffs' failure to assert any specific impairment of vehicular access. However, at oral argument on the motion on December 23, 1991, plaintiffs' counsel suggested the impairment of vehicular access to the property could also include the loss of possible future driveway access. The court continued the hearing to allow the parties to present supplemental briefing on the issue. Ultimately the court denied defendant's motion for summary judgment on the ground there remained a triable issue of mixed law and fact regarding the extent to which the traffic island and guard railing on the sidewalk constituted a general impairment of access.

In April 1992, defendant made a motion *in limine* to narrow the issue at trial to whether plaintiffs had been deprived of a future right to driveway access, the only factually specific impairment articulated by the plaintiffs. The trial court denied the motion but ordered plaintiffs to submit a summary of their specific claims of loss or impairment of access.

Plaintiffs continued to rely on their generalized claim to an easement of access directly onto the street abutting their property. The trial court granted defendant's renewed motion *in limine* to restrict the evidence of impairment at trial to interference with future construction of a driveway on the Flower Street side of the property.

Trial was to the court, which found no substantial impairment of access. In its oral ruling from the bench the trial court stated: "Well, let me just say—save you some time, even were we not following the limited ruling or the limited scope of evidence that this hearing took on because of Judge Gold's ruling, I—a simple viewing of the exhibits and taking all of the exhibits into question would lead this court, I think any court, to conclude that there has been no impairment of access in this case under any circumstances.

"But focusing merely on vehicular access, this court finds that there has been no loss of ability for vehicular access. Under the policy guidelines and the ordinances cited by, or introduced by, counsel for the defense and of which has taken [*sic*] judicial notice, it's still possible for the plaintiff to apply for a driveway and to obtain—either obtain vehicular access under the policies enunciated in the guidelines or to have a finding that the vehicular access is adequate, either on the Venice side or the Pembrook Lane [*sic*] access, but I don't find that there is any actionable impairment of access in this case.

"Even the plaintiffs' expert has said that he totally disregarded the driveway situation with respect to this subject property and looked only to the loss of future assemblage as the measure of damages. And that testimony is in the record. There was no objection to that or, if there were, the court let that testimony in. But I think it's highly speculative and the court, therefore rejects that testimony."

Plaintiffs appeal from the judgment, claiming the trial court erred because the physical facts establish a substantial impairment of access as a matter of law. In addition, they contend the trial court committed reversible error in granting defendant's motion *in limine* to exclude all evidence of impairment except with regard to future construction of a driveway onto the property.

DISCUSSION

I. *It Was Not Error to Find No Actionable Impairment of Access.*

 Plaintiffs contend the undisputed physical facts establish an actionable interference with their easement of access to Flower Street as a matter of law.

■ California appellate decisions have long recognized a property owner enjoys property rights in the street upon which his or her land abuts. Among these rights is an easement of access in such street. (*People* v. *Symons* (1960) 54 Cal.2d 855, 860 [9 Cal.Rptr. 363, 357 P.2d 451]; *People* v. *Russell* (1957) 48 Cal.2d 189, 195 [309 P.2d 10]; *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 349-350 [144 P.2d 818]; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 397 [144 P.2d 799]; *Rose* v. *State of California* (1942) 19 Cal.2d 713, 727-728 [123 P.2d 505]; *Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614, 617-619 [37 P. 750]; 7 Miller & Starr, Cal. Real Estate (2d ed. 1990) Inverse Condemnation, § 23.8, pp. 614-615; 3 Manaster & Selmi, Cal. Environmental Law and Land Use Practice (1989) Constitutional Controls, § 68.20[4][a], p. 68-47; 14 Dankert, Cal. Real Estate Law & Practice (1973) Condemnation Practice, § 512.32, p. 512-28.2.)

This easement consists of the right to get into the street upon which the landowners' property abuts and from there, in a reasonable manner, to the general system of public streets. (See *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 351, 355; *People* v. *Ayon* (1960) 54 Cal.2d 217, 223 [5 Cal.Rptr. 151, 352 P.2d 519]; 7 Miller & Starr, Cal. Real Estate, *supra,* Inverse Condemnation, § 23.8, pp. 614-615; 3 Manaster & Selmi, *supra,* Cal. Environmental Law and Land Use Practice, Constitutional Controls, § 68.20[4][a], p. 68-47; 14 Dankert, Cal. Real Estate Law & Practice, *supra,* Condemnation Practice, § 512.32, p. 512-28.2.)

"To designate the right, however, is not to delineate its precise scope. Not every interference with the property owner's access to the street upon which his property abuts and not every impairment of access, as such, to the general system of public streets constitutes a taking which entitles him to compensation. Such compensation must rest upon the property owner's showing of a *substantial impairment* of his right of access to the general system of public streets. [¶] . . . [¶] Substantial impairment cannot be fixed by abstract definition; it must be found in each case upon the basis of the factual situation. 'While certain general rules have been set forth in the various decisions which have considered the nature and scope of this right, each case must be considered upon its own facts.' (*People* v. *Russell, supra,* 48 Cal.2d at p. 195.)" (*Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663-665 [39 Cal.Rptr. 903, 394 P.2d 719], italics in original, fn. omitted.) Thus, the initial question whether there has been a substantial impairment of access is in truth a mixed question of law and fact, decided predominately as a question of law. (Compare *People* v. *Ricciardi, supra,* 23 Cal.2d at p. 402 and *People* ex rel. *Dept. of Public Works* v. *Becker* (1968) 262 Cal.App.2d 634, 639 [69 Cal.Rptr. 110] with *Breidert* v. *Southern Pac. Co., supra,* 61

Cal.2d at p. 664 [question of law] and 7 Miller & Starr, Cal. Real Estate, *supra*, Inverse Condemnation, § 23.8, p. 615 [same].)

■ A loss of direct access to an abutting road is considered a substantial impairment of access. Thus construction built directly on a portion of a road which cuts off direct access from an abutting property is an actionable impairment. (*People* v. *Loop* (1954) 127 Cal.App.2d 786, 802-804 [274 P.2d 885] [triangular piece of land taken from part of property fronting on Wilshire Boulevard to build Harbor Freeway off-ramp left owners with very limited access to Wilshire Boulevard]; *Goycoolea* v. *City of Los Angeles* (1962) 207 Cal.App.2d 729, 733-735 [24 Cal.Rptr. 719] [construction of raised viaduct on major portion of abutting road left property with one-lane passageway too small for commercial trucks to reach industrial property]; see also 3 Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra*, Constitutional Controls, § 68.20[4][b], p. 68-49, and cases collected.)

Also a major change in the grade of the road, such as construction of highway underpasses, overpasses and freeway off-ramps, which prevents direct access to a property abutting the new construction, is a substantial impairment of access. (See, e.g., *Blumenstein* v. *City of Long Beach* (1956) 143 Cal.App.2d 264, 267-269 [299 P.2d 347] [freeway off-ramp]; *Anderson* v. *State of California* (1943) 61 Cal.App.2d 140, 143 [142 P.2d 88] [grade of road fronting plaintiff's property elevated several feet to build bridge]; *Goycoolea* v. *City of Los Angeles*, *supra*, 207 Cal.App.2d 729, 733-735 [street abutting plaintiff's property substantially narrowed to create a raised viaduct on remaining portion of road which blocked air, light and view to property] and cases collected in 14 Dankert, Cal. Real Estate Law & Practice, *supra*, Condemnation Practice, § 512.32[3], p. 512-29-30.) After replacing an old road with a major highway, the provision for service road access to abutting property owners' property will not necessarily preclude a finding of substantial impairment of access if the service road is too narrow to permit the intended use of the abutting owners' property. (See, e.g., *Rose* v. *State of California*, *supra*, 19 Cal.2d 713, 729 [single-lane service road too narrow and dangerous for commercial trucks to reach industrial property]; *People* v. *Ricciardi*, *supra*, 23 Cal.2d 390, 403-404 [provision for narrow service road still left property with impaired access as property hidden behind ramp and freeway traffic from off-ramp emptied substantial distance away from owner's property].)

■ In building California's freeway systems, several residential streets were turned into cul-de-sacs which cut off access to one of the two next

intersecting streets. The Supreme Court recognized the right of a property owner to convenient access to intersecting streets in both directions. (See, e.g., *Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 351-355.) However, creation of a cul-de-sac is not a compensable taking as a matter of law, but is considered a substantial factor is assessing whether there has been an unreasonable impairment of access in a given case. (*Bacich* v. *Board of Control, supra,* 23 Cal.2d 343, 352-355; *Breidert* v. *Southern Pac. Co., supra,* 61 Cal.2d 659, 663-665; *Valenta* v. *County of Los Angeles* (1964) 61 Cal.2d 669, 671-672 [39 Cal.Rptr. 909, 394 P.2d 725].) For example, no actionable taking is found where a property owner can reach the general system of streets by traveling only a fraction of a mile farther than before creation of the cul-de-sac. (See, e.g., *People* v. *Symons, supra,* 54 Cal.2d 855, 859-861; *People* ex rel. *Dept. of Public Works* v. *Wasserman* (1966) 240 Cal.App.2d 716, 727-730 [50 Cal.Rptr. 95].)

In *People* v. *Ayon, supra,* 54 Cal.2d 217, the Supreme Court clarified limitations on finding an impairment of access. In *Ayon* the property in question was a supermarket and adjoining customer parking lot. Prior to the street improvements customers traveling in either direction could enter the customer parking lot directly from Azusa Avenue. There was no divider strip separating the traffic lanes, and customers traveling north on Azusa Avenue could make a left-hand turn into the supermarket parking lot. Southbound traffic could turn right into the lot. Traffic flow in this area was rerouted, allowing only southbound traffic on a portion of Azusa Avenue. In addition, a metal divider strip was placed in the center of a now widened Azusa Avenue, preventing left-hand turns into the lot from north bound traffic lanes. Supermarket customers traveling in this direction had to take a more circuitous route to reach the store.

The lessee and sublessee of the market sought damages for impaired access to their property caused by the diversion and rerouting of traffic on the street abutting their property. The Supreme Court affirmed the trial court's finding the parties had suffered no substantial impairment of access. " 'The courts of this state, from time immemorial and in cases too numerous to mention, have declared and enforced an abutting property owner's right to a free and convenient use of and access to the highway on which his property abuts. [Citing cases.]' (*People* v. *Ricciardi,* 23 Cal.2d 390, 397 [144 P.2d 799].) But it is equally true that the right of a property owner to ingress and egress is not absolute. He cannot demand that the adjacent street be left in its original condition for all time to insure his ability to continue to enter and leave his property in the same manner as that to which he has become accustomed. Modern transportation requirements necessitate continual improvements of streets and relocation of traffic. The

property owner has no constitutional right to compensation simply because the streets upon which his property abuts are improved so as to affect the traffic flow on such streets. If loss of business or of value of the property results, that is noncompensable. It is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions.

"The compensable right of an abutting property owner is to direct access to the adjacent street and to the through traffic which passes along that street (*People* v. *Ricciardi, supra.*) If this basic right is not adversely affected, a public agency may enact and enforce reasonable and proper traffic regulations without the payment of compensation although such regulations may impede the convenience with which ingress and egress may thereafter be accomplished, and may necessitate circuitry of travel to reach a given destination. 'In the proper exercise of its police power in the regulation of traffic, a state or county may do many things which are not compensable to an abutting property owner, such as constructing a traffic island, placing permanent dividing strips which deprive an abutter of direct access to the opposite side of the highway, painting double white lines on the highway, or designating the entire street as a one-way street. [Citations.]' (*People* v. *Russell*, 48 Cal.2d 189, 197 [309 P.2d 10].) The *Russell* case held that the use of a parkway as a traffic separation strip between a state highway and a county road was a noncompensable traffic regulation.

"Under these well-settled rules the appellants are not entitled to compensation because of the divider strip placed in the middle of Azusa. They have direct access to that street and to traffic traveling in one direction on the street. [Citations.]

"Nor can appellants complain because the relocation plan will divert some southbound traffic from Azusa in front of appellants' property. A property owner has no right to compensation because traffic is rerouted or diverted to another thoroughfare even though the value of his property is substantially diminished as a result. [Citations.]" (*People* v. *Ayon, supra*, 54 Cal.2d. at pp. 223-224.)

■ We apply these guidelines to the facts in the case at bar. Plaintiffs concede there has been no impairment of pedestrian access to their property. Instead they assert an impairment of vehicular access. Before the construction, vehicular traffic on Flower Street was two-way. After the construction, only southbound traffic is allowed. ■ However, designating an entire street one-way is a noncompensable police regulation. (*People* v. *Ayon, supra*, 54 Cal.2d. at p. 224; *Beckham* v. *City of Stockton* (1944) 64 Cal.App.2d 487, 502 [149 P.2d 296].)

 Prior to construction of the Blue Line there was limited available curb parking on Flower Street. Curb parking directly in front of plaintiffs' property prior to the construction, however, was severely limited due to the placement of the crosswalk and fire hydrant. Thus even in the before condition, to park one's car directly in front of plaintiffs' property would have been illegal except at the northern most point of the property. After the construction, curb parking or stopping is similarly illegal, and considerably more dangerous. However, even if the loss of a single parking space constitutes an impairment of vehicular access as a practical matter, the deprivation of parking rights on abutting streets similarly constitutes a noncompensable exercise of the city's police power. (See *People* ex rel. *Dept. of Pub. Wks.* v. *Presley* (1966) 239 Cal.App.2d 309, 314-316 [48 Cal.Rptr. 672] [owner whose property abutted road had no proprietary right to street parking which was instead privilege shared with public at large which existed only at sufferance by the city].)

 The placement of the pedestrian guard rails, Blue Line rails and concrete island traffic separator has the effect of preventing vehicular traffic from passing directly in front of plaintiffs' property. After the construction, through traffic was diverted one lane away to accommodate the Blue Line right of way. However, persons traveling in those cars can still see plaintiffs' building, but cannot stop or park their car at the curb outside plaintiffs' business. (Cf. *People* v. *Symons, supra,* 54 Cal.2d 855, 860 [interference with view of building may be actionable impairment].) However, the net effect on vehicular access to plaintiffs' property is no different than if the city had simply exercised its police power to prohibit all street parking on Flower Street. (See *People* ex rel. *Dept. of Pub. Wks.* v. *Presley, supra,* 239 Cal.App.2d 309, 314-316.) Thus, loss of curb parking is a noncompensable police power regulation. Moreover, it cannot be evidence of substantial impairment in this case where there was virtually no curbside access to plaintiffs' property in the before condition in any event.

 As noted, an abutting property owner does not have the right to insist a street be left in its original condition. (*People* v. *Ayon, supra,* 54 Cal.2d at p. 223.) Nor does an abutting property owner have the right to compensation for the diversion or rerouting of traffic. (*Rose* v. *State of California, supra,* 19 Cal.2d at p. 737; *Holloway* v. *Purcell* (1950) 35 Cal.2d 220 [217 P.2d 665].) Thus plaintiffs cannot demonstrate a substantial impairment of vehicular access from the noncompensable element of diverting traffic one lane away from plaintiffs' property line. As the Supreme Court stated in *Rose* v. *State of California, supra,* 19 Cal.2d at page 737, ". . . a landowner has no property right in the continuation or maintenance of the flow of traffic past his property."

On the other hand, the physical evidence established the pedestrian guard rails, Blue Line rails and raised concrete traffic island separator impaired the possible future construction of a driveway onto the property from Flower Street. Based on the physical and testimonial evidence, the trial court found these impediments did not create a substantial impairment of vehicular access to the property from Flower Street. The property had no driveway access in the before condition. In addition, plaintiffs stated they had no intention of constructing a driveway in the future. Defendant's policies and practices nevertheless gave them the right to request permission to construct a driveway on Flower Street, despite the property's narrow frontage on that street, and even though the pedestrian guardrails and concrete traffic divider would have to be redesigned and constructed. Furthermore, plaintiffs' expert witness testified the highest and best use of the property in its current condition was its present use. He testified the lack of a driveway on the Flower Street side did not affect either the value or the current use of the property.

Moreover, there are several circumstances in this case which mitigate any impairment of vehicular access to the property. The major portion of the property abuts on Venice Boulevard. Vehicular traffic on this street remains unchanged. Traffic still flows in both directions and curbside parking on Venice Boulevard is also available. In addition, vehicles on Venice Boulevard may reach the property by entering Pembroke Lane. This street leads into plaintiffs' property from the rear.

In sum, the trial court did not err in finding the construction of the Blue Line did not substantially impair vehicular access to plaintiffs' property.[1]

In an attempt to avoid this conclusion plaintiffs cite various decisions which found a compensable impairment of access. Each of these cases is distinguishable on its facts.

For example, in *People* v. *Ricciardi, supra,* 23 Cal.2d 390 the street which abutted the owner's property was changed to a 17-foot deep freeway underpass. The property owner was left with a small, grade-level service road for ingress and egress. Through traffic in either direction had to take a circuitous route to reach the property, and these roads could only be reached from

---

[1]This case might be in an entirely different posture if vehicles had previously been able to enter and exit plaintiffs' property from Flower Street, and such access had been completely cut off due to installation of traffic dividers and guardrails. (Cf. *People* v. *Ayon, supra,* 54 Cal.2d 217; *Lane* v. *San Diego Elec. Ry. Co.* (1929) 208 Cal. 29 [280 P. 109].) However, the undisputed evidence established plaintiffs did not have vehicular entry points on the Flower Street side of their property to block.

points considerably to the north or south of the property. Here there has been no change in the grade of the street, nor does any change in the street require lengthy and inconvenient detours for vehicular access.

*Blumenstein* v. *City of Long Beach, supra,* 143 Cal.App.2d 264 involved the construction of a freeway off-ramp on the street Blumenstein's property originally abutted. Access to Anaheim Street was cut off by the off-ramp and five-foot-wide, nine-inch-high concrete divider. Vehicles could not reach the property from Anaheim Street due to the divider and off-ramp. Also vehicles could not reach the property from the off-ramp because through traffic exited at a point well beyond the property. An obvious distinction between this case and *Blumenstein* is, here the plaintiffs had no direct vehicular access into the property from the Flower Street side prior to the change in the street. Thus if there is an impairment of vehicular access from Flower Street, it existed both before and after the construction. Also unlike the situation in this case, Blumenstein lost both pedestrian and vehicular access to Anaheim Street.

In *Lane* v. *San Diego Elec. Ry. Co., supra,* 208 Cal. 29 the plaintiffs owned property in San Diego. They operated an automobile garage on part of their property. The City of San Diego installed an electric railway system and constructed a turn-around loop directly in front of plaintiffs' building. Parts of the rails ran directly over their sidewalk area and across the driveway entrance to the garage. Passing trains interfered with ingress and egress to the commercial garage. The court found access to the property had been substantially impaired because the improvements interfered with plaintiffs' intended use of the property. In this case plaintiffs have virtually the identical vehicular access as they did before the construction. Unlike the situation in *Lane*, none of their entrances or exits have been lost or blocked.

*United Cal. Bank* v. *People* ex rel. *Dept. of Pub. Wks.* (1969) 1 Cal.App.3d 1 [81 Cal.Rptr. 405] involved a change in the grade of one of the abutting roads, the complete closure of another to vehicular traffic, the rerouting of vehicular access to the property to another street and the loss of visibility of the building from the streets. This combination of events led the court to find the plaintiffs had suffered a substantial impairment of access from the street improvements. No similar changes, or combination of changes, occurred in the case at bar.

In short, plaintiffs have cited no cases which found a substantial impairment of access on facts analogous to the facts in the case at bar. While the Blue Line improvements might have changed the open and unstructured

nature of Flower Street to a certain degree, and possibly caused plaintiffs some inconvenience, this is insufficient to support a finding plaintiffs suffered a substantial impairment of access. ■ As our Supreme Court warned in the context of the total closure of an intersecting street, "[a]t a time when the tremendous growth of population of this state compels rerouting and rearrangement of streets and highways, the claimed damages to property owners from loss of access to the next intersecting street and to the general system of streets must be more than formal. It must be a true loss; it must be substantial." (*Breidert* v. *Southern Pac Co., supra,* 61 Cal.2d at p. 668.)

We conclude the trial court's finding of no actionable interference with access is supported by the law and evidence. Accordingly, we find no error.

II. *Any Error in Granting Defendant's Motion in Limine Was Harmless.**

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. Each side to bear its own costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied August 14, 1995.

---

*See footnote, *ante,* page 1738.