[No. B076697. Second Dist., Div. Four. Mar. 5, 1996.]

ILLAH PERRIN, Plaintiff and Appellant, v.
LOS ANGELES COUNTY TRANSPORTATION COMMISSION,
Defendant and Respondent.

1808

COUNSEL

Sullivan, Workman & Dee, John J. Dee and Henry K. Workman for Plaintiff and Appellant.

Nossaman, Guthner, Knox & Elliott, James C. Powers and Karen McLaurin Chang for Defendant and Respondent.

OPINION

VOGEL (C. S.), P. J.—

## INTRODUCTION

In this inverse condemnation action, the plaintiff contended that construction of the Blue Line resulted in substantial impairment of access to her property and sought compensatory damages. Following a bench trial, the court found there had been no substantial impairment of access and entered judgment in favor of defendant.[1] Plaintiff appeals. We affirm.

## STATEMENT OF FACTS

Plaintiff Illah Perrin owned two adjacent parcels of improved real property on the east side of Flower Street, between Pico and Venice Boulevards, in the City of Los Angeles. One parcel (Lot 14) contains a one-story building with no setback from the sidewalk. The other parcel (Lot 15) contains a two-story building set back fifty-five feet from the sidewalk. Plaintiff manufactured sportswear and golf bags. The buildings were used for manufacturing and also contained plaintiff's business offices. An alley (Pembroke Lane) runs along the back of the buildings. There is a 20-by-50-foot paved area between the back of the building on Lot 15 and the alley. The area in front of the building on Lot 15 was used for parking and some deliveries. Deliveries of large items were made to the rear of the building via the alley.

In 1988, construction of the Los Angeles-Long Beach Light Rail Transit Project (the Blue Line) began. The Blue Line runs north and south on the east side of Flower Street. Its tracks are laid in the street at grade level, flush with the street. A concrete divider strip, a few inches high, separates vehicular traffic from the Blue Line tracks. The Blue Line right-of-way is 28

---

[1] Plaintiff sued the Los Angeles County Transportation Commission, the predecessor to the Los Angeles County Metropolitan Transportation Authority.

feet wide. A metal guardrail structure along the edge of the sidewalk separates pedestrians from the tracks.

The vehicular traffic consists of four lanes, all of which run south. There are separations in both the guardrail structure and the concrete divider strip so that cars driving south on Flower Street can turn left into the driveway accessing plaintiff's property on Lot 15 and cars exiting from Lot 15 can drive out the same driveway, cross the tracks, and turn left onto Flower Street.[2] Two of the four lanes are open to traffic at all times. The lane next to the westside curb is open to traffic during peak hours and is available for parking during the other hours. The fourth lane is the left turn lane. Signal lights and signs warn drivers not to turn into plaintiff's property when a train is approaching or passing. Similarly, signs warn drivers of vehicles leaving Lot 15 to look for the train(s).

The Blue Line train consists of one or two cars. In the area of plaintiff's property, the train does not exceed 35 miles per hour. During the peak hours of 6 a.m. to 9 a.m. and 3 p.m. to 6 p.m., 20 trains pass in 1 hour. During other hours, eight trains pass per hour.

The construction of the Blue Line resulted in the following changes. The Blue Line has a 28-foot right-of-way in which the tracks are placed. Flower Street is now a one-way street instead of a two-way street. The sidewalks on each side have been reduced from 17 feet to 10 feet wide and a guardrail was constructed between the sidewalk and the tracks. And parking on the east side of Flower Street, the side on which plaintiff's property is located, has been eliminated.

When Blue Line construction began in 1988, plaintiff put the property up for sale. She sold it in 1991 for $1.1 million. Plaintiff's expert testified that the Blue Line construction had diminished the property's fair market value by $490,000.

Plaintiff's theory was that, taken together, all of the circumstances attendant to the construction of the Blue Line had resulted in substantial impairment of her easement of access to her property, thereby giving her a right to compensatory damages. The trial court, after receiving all of the evidence,[3] disagreed. It ruled: "[P]laintiff had before construction and still had after construction of the Blue Line means of access to her property including

---

[2] The gap in the concrete separator strip is wider than the driveway of plaintiff's property into which a car would turn.

[3] The evidence included photographs. Those photographs are part of the record on appeal. We have reviewed them.

means of ingress and egress to Flower Street with the ability before the construction of the light rail line to go either northerly or southerly on Flower Street. In the after condition the flow of traffic for vehicle traffic was only southerly on Flower Street. . . . [¶] The court finds that after construction of the Blue Line there was no substantial impairment of access to the plaintiff's property. The court further finds there was no taking or substantial interference with plaintiff's right of ingress and egress to Flower Street. [¶] By reason of there being no substantial impairment of access to plaintiff's property by reason of the construction of the Blue Line, there are no recoverable damages by the plaintiff." This appeal follows.

## DISCUSSION

The nub of plaintiff's appeal is the contention that the record established *as a matter of law* that the construction of the Blue Line resulted in a substantial impairment of her easement of access to her property. We disagree. In evaluating plaintiff's contention, we are greatly assisted by the recent decision in *Brumer* v. *Los Angeles County Metropolitan Transportation Authority* (1995) 36 Cal.App.4th 1738 [43 Cal.Rptr.2d 314]. *Brumer* considered and rejected a nearly identical claim made by the owner of the property located at the northeast corner of the intersection of Flower Street and Venice Boulevard.[4] The landowner and the defendant in *Brumer* were represented by the same attorneys, respectively, as are the parties in our case. Consequently, there is no need for us to canvass in detail the very scholarly opinion Justice Johnson crafted for the *Brumer* court. Instead, we will refer to it when necessary to resolve particular issues in this appeal.

A property owner possesses an easement of access. "This easement consists of the right to get into the street upon which the landowners' property abuts and from there, in a reasonable manner, to the general system of public streets." (*Brumer* v. *Los Angeles County Metropolitan Transportation Authority, supra,* 36 Cal.App.4th at p. 1745, and authorities cited therein.) However, every governmental interference with the right does *not* constitute a taking, entitling the landowner to compensation. "Such compensation must rest upon the property owner's showing of a *substantial impairment* of his right of access to the general system of public streets. [¶] . . . [¶] Substantial impairment cannot be fixed by abstract definition; it must be found in each case upon the basis of the factual situation. 'While certain general rules have

---

[4]*Brumer* was filed after briefing had been completed in this appeal. Defendant's counsel brought the opinion to our attention via a letter. At oral argument, plaintiff's attorney conceded that *Brumer* compels affirmance of the trial court's judgment but asked us to hold that *Brumer* was incorrectly decided. We decline plaintiff's invitation.

been set forth in the various decisions which have considered the nature and scope of this right, each case must be considered upon its own facts.' [Citation.]" (*Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663-665 [39 Cal.Rptr. 903, 394 P.2d 719], italics in original, fn. omitted.) Thus, it is patent that the issue of substantial impairment is a fact-based inquiry.

Before pursuing that inquiry, we briefly discuss the applicable appellate standard of review. After respondent-defendant's brief pointed out that plaintiff's opening brief read more like a trial court argument than an appellate brief grounded on the assumption that substantial evidence supports the judgment, plaintiff responded by citing to cases (including this division's decision in *United Cal. Bank* v. *People* ex rel. *Dept. Pub. Wks.* (1969) 1 Cal.App.3d 1, 10-11 [81 Cal.Rptr. 405], but see p. 6) which contain statements to the effect that the issue of substantial interference is a question of *law* for the trial court to determine. ■ Utilizing that latter principle, plaintiff claims that the question of substantial impairment is one that we, as an appellate court, can review de novo, unconstrained by the traditional rule that we are to draw every inference in support of the judgment. Plaintiff's position lacks merit. For one thing, plaintiff takes various statements out of context; none of them squarely addresses the issue in the context of determining the proper scope of appellate review of a trial court decision. But more importantly, the very recent case of *San Diego Metropolitan Transit Development Bd.* v. *Price Co.* (1995) 37 Cal.App.4th 1541 [44 Cal.Rptr.2d 705] considered and rejected the very same argument plaintiff now makes. That court, after canvassing many precedents, concluded: "Because of the factual nature of the inquiry, which is unique to each property, we view the trial court's determination of 'substantial' impairment as a determination to be sustained if it is supported by substantial evidence. [Citations.] The characterization of the issue of substantial impairment as one of law means only that the compensability issue is a court issue and not a jury issue; the jury issue is limited to the amount of damages." (*Id.* at p. 1548.)

Viewing the record in that light, we will uphold the trial court's decision.

■ "A loss of direct access to an abutting road is considered a substantial impairment of access. . . . [Citations.] [¶] Also a major change in the grade of the road, such as construction of highway underpasses, overpasses and freeway off-ramps, which prevents direct access to a property abutting the new construction is a substantial impairment of access. [Citations.]" (*Brumer* v. *Los Angeles County Metropolitan Transportation Authority, supra*, 36 Cal.App.4th at p. 1746.)

On the other hand, ". . . the right of a property owner to ingress and egress is not absolute. He cannot demand that the adjacent street be left in its

original condition for all time to insure his ability to continue to enter and leave his property in the same manner as that to which he has become accustomed. Modern transportation requirements necessitate continual improvements of streets and relocation of traffic. The property owner has no constitutional right to compensation simply because the streets upon which his property abuts are improved so as to affect the traffic flow on such streets. If loss of business or of value of the property results, that is noncompensable. It is simply a risk the property owner assumes when he lives in modern society under modern traffic conditions. [¶] The compensable right of an abutting property owner is to direct access to the adjacent street and to the through traffic which passes along that street. [Citation.] If this basic right is not adversely affected, a public agency may enact and enforce reasonable and proper traffic regulations without the payment of compensation although such regulations may impede the convenience with which ingress and egress may thereafter be accomplished, and may necessitate circuity of travel to reach a given destination. 'In the proper exercise of its police power in the regulation of traffic, a state or county may do many things which are not compensable to an abutting property owner, such as constructing a traffic island, placing permanent dividing strips which deprive an abutter of direct access to the opposite side of the highway, painting double white lines on the highway, or designating the entire street as a one-way street. [Citations.]' " (*People* v. *Ayon* (1960) 54 Cal.2d 217, 223-224 [5 Cal.Rptr. 151, 352 P.2d 519].)

At bench, the construction of the Blue Line resulted in the following changes. Flower Street is now a one-way street. The Blue Line has a 28-foot wide right-of-way in the street immediately adjacent to plaintiff's property so that parking is no longer permitted on that side of the street. A rail guard on the sidewalk prevents pedestrians from entering into the street. A concrete divider has been added to the street to separate the train tracks from vehicular traffic. And a car wishing to turn left from Flower Street onto plaintiff's property must now watch for trains instead of northbound vehicular traffic.

■ Given these facts, the trial court did not err in finding that defendant's actions had not resulted in a substantial impairment of plaintiff's easement of access. "[D]esignating an entire street one-way is a noncompensable police regulation. [Citations.] [¶] . . . [T]he deprivation of parking rights on abutting streets similarly constitutes a noncompensable exercise of the city's police power. [Citation.] [¶] The placement of the pedestrian guard rails, Blue Line rails and concrete island traffic separator has the effect of preventing vehicular traffic from passing directly in front of plaintiff['s]

property. After the construction, through traffic was diverted [to] one lane away to accommodate the Blue Line right of way. However, persons traveling in those cars can still see plaintiff['s] building, but cannot stop or park their car at the curb outside plaintiff['s] business. [Citation.] However, the net effect on vehicular access to plaintiff['s] property is no different than if the city had simply exercised its police power to prohibit all street parking on Flower Street. [Citation.] Thus, loss of curb parking is a noncompensable police power regulation. . . .

"As noted, an abutting property owner does not have the right to insist a street be left in its original condition. [Citation.] Nor does an abutting property owner have the right to compensation for the diversion or rerouting of traffic. [Citations.] Thus plaintiff[] cannot demonstrate a substantial impairment of vehicular access from the noncompensable element of diverting traffic one lane away from [her] property line. As the Supreme Court noted in *Rose* v. *State of California* [(1942)] 19 Cal.2d [713] at page 737, . . . 'a landowner has no property right in the continuation or maintenance of the flow of traffic past [her] property.' " (*Brumer* v. *Los Angeles County Metropolitan Transportation Authority*, supra, 36 Cal.App.4th at pp. 1748-1749.)

Plaintiff acknowledges this authority but attempts to make the following distinction. She concedes some of the impairment (e.g., loss of street parking) would *not* be compensable had it resulted from the government's enactment, through the exercise of its police power, of traffic regulations (e.g., painting the eastside curb of Flower Street red) but then points to the fact that the impairment resulted not from the direct exercise of such a police power but instead was merely one effect of the construction of the Blue Line. She urges: "[T]he construction and operation of a railroad for public use is not an exercise of the police power and, to the extent parking is eliminated for such public use[,] compensation is constitutionally required." This is a distinction without a difference. Defendant constructed the Blue Line pursuant to the authority granted it by the Legislature. (See, in general, Pub. Util. Code, §§ 130000-130060.) This authority includes "the power of eminent domain to take any property necessary, incidental, or convenient to the exercise of its powers . . . ." (Pub. Util. Code, § 130220.5.) Because defendant has the power of condemnation over private property, it is irrelevant if defendant also has the right to implement "police power" traffic regulations. The dispositive issue is still the same: did defendant's actions result in a substantial impairment of the right to access? (*San Diego Metropolitan Transit Development Bd.* v. *Price Co.*, supra, 37 Cal.App.4th at p. 1549.)

On the critical issue of access to plaintiff's property, the record demonstrates that the same accesses to plaintiff's property are available as existed prior to the Blue Line construction. Access to the rear of the property is still available from the alley. And a vehicle driving on Flower Street can still turn into the parking area on Lot 15. Although plaintiff had urged that it was now more difficult for certain types of vehicles to enter Lot 15 from Flower Street, the court rejected that evidence. In orally announcing its decision from the bench, the court stated, in part: "[T]here have been no witnesses here to testify as to their particular use or access to the property itself other than [plaintiff's expert witness on diminution in value and he] has not really attempted to get in and out of this property. There has been a decided lack of witnesses who have come forward to testify as to their particular access to this property and to indicate that they have been denied the ability as previously had before as to being able to deliver or to just come upon the property for business purposes." These comments indicate that the court found unpersuasive the evidence plaintiff offered to prove that it was now more difficult to gain access to her property.[5] We must defer to this credibility determination.

"While the Blue Line improvements might have changed the open and unstructured nature of Flower Street to a certain degree, and possibly caused plaintiff[] some inconvenience, this is insufficient to support a finding plaintiff[] suffered a substantial impairment of access. As our Supreme Court warned in the context of the total closure of an intersecting street, '[a]t a time when the tremendous growth of population of this state compels rerouting and rearrangement of streets and highways, the claimed damages to property owners from loss of access to the next intersecting street and to the general system of streets must be more than formal. It must be a true loss; it must be substantial.' (*Breidert* v. *Southern Pac Co.*, *supra*, 61 Cal.2d at p. 668.)" (*Brumer* v. *Los Angeles County Metropolitan Transportation Authority*, *supra*, 36 Cal.App.4th at pp. 1751-1752.) In sum, the record supports the trial court's finding of no substantial impairment.[6]

Lastly, we note that plaintiff errs by placing great emphasis on her expert witness's testimony that the Blue Line *diminished* the value of her land.

---

[5]Plaintiff's expert witness on the issue of valuation testified that he did not know whether or not a truck with a trailer would be able to drive onto Lot 15 to make deliveries without having to park on the Blue Line tracks. Plaintiff also testified about the purported difficulties of having a truck with a trailer cross the Blue Line tracks and enter Lot 15. Her testimony, however, was given in the most general of terms and was devoid of any specific examples. Moreover, she conceded a truck with a trailer could still use the alley to access the property.

[6]Plaintiff cites numerous cases to argue that substantial impairment was established as a matter of law. There is no need for us to dissect each of those matters. The *Brumer* opinion adequately covered many of those precedents and explained why each was distinguishable on its facts. (*Brumer* v. *Los Angeles County Metropolitan Transportation Authority*, *supra*, 36

Assuming the verity of that assumption, it does not assist plaintiff on this appeal. The theory of plaintiff's inverse condemnation action and the predicate to her right to recover damages was the claim that the Blue Line resulted in substantial impairment of the easement of access. By focusing on diminution damages, plaintiff places the proverbial cart before the horse. The extent of damages is not an issue unless and until plaintiff establishes defendant's liability. Plaintiff did not do so.

### DISPOSITION

The judgment is affirmed.

Epstein, J., and Hastings, J., concurred.

---

Cal.App.4th at pp. 1750-1752.) As to the cases *Brumer* did not address, we have reviewed them and find them inapposite to this matter.